# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| MOTOROLA MOBILITY, INC., | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | Consolidated Cases: |
| APPLE INC., | Case No. 1:10-cv-23580-RNS |
| Defendant. | Case No. 1:12-cv-20271-RNS |
| APPLE INC., | |
| Counterclaim Plaintiff | |
| v. | |
| MOTOROLA MOBILITY, INC., HTC CORPORATION, HTC AMERICA, INC., ONE & COMPANY DESIGN, INC., and HTC AMERICA INNOVATION INC., | |
| Counterclaim Defendants. | |

## HTC COUNTERCLAIM DEFENDANTS' MOTION TO TRANSFER VENUE

## I.    INTRODUCTION

A year and a half into this already-too-large litigation between Apple and Motorola, by way of amended counterclaim, Apple, a California corporation, sued a Taiwan corporation, two Washington State corporations and a California corporation (HTC Corporation, HTC America, Inc., HTC America Innovation, Inc. and One & Company Design, Inc., respectively (collectively "HTC")) in the Southern District of Florida.  By so doing, Apple and HTC find themselves in a lawsuit in a district that has no rational connection to the issues or evidence in the case.

Apple has not even been internally consistent in its venue selection for its smartphone battles.  On at least four different occasions it has sued HTC Corporation and several of its subsidiaries for patent infringement in the District of Delaware.  In total, it asserts twenty-six Apple patents against HTC in Delaware, all of which target HTC's sale of its smartphones, like the lawsuit here.  Indeed, except for the HTC products accused here that postdate Apple's Delaware disclosures, every single HTC product accused in this case is also accused in Delaware.  Moreover, one of the patents in Delaware is the "parent" to a patent asserted here against HTC, and many of the inventors in Delaware are the same as the inventors here.  And when HTC contended at the very outset of the first Delaware case that Delaware was an inconvenient forum, Apple vehemently (and successfully) opposed.  So why would Apple choose this district rather than Delaware for the next salvo?

Since successfully keeping its litigation in Delaware, Apple has grown less fond of its forum choice because Chief Judge Gregory Sleet, who presides over all of the Delaware actions, stayed Apple's various claims because they overlapped (by subject area, and even in some cases by patent) with complaints that Apple had brought in the International Trade Commission.  Thus, Apple's rationale for suing HTC in this district comes into focus.  By adding HTC to this case, Apple achieved two goals.  First, it was able to skirt the stay of litigation pending in Delaware

1

between it and HTC.  Second, it was able to muddy and delay the existing suit in this district, where it was defending against claims brought by Motorola and faced a looming 2012 trial date. Although Apple's tactical suit against HTC was savvy, that is no justification to force HTC to defend itself in a forum convenient to no one.

This motion seeks to re-align the priorities in Apple's many patent battles.  The limited resources of the Courts and the convenience of witnesses take precedence over Apple's forum shopping.  Further to HTC's pending motion to sever, HTC respectfully requests that the Court transfer the severed claims against HTC to the District of Delaware where they can be managed and litigated with at least four pending actions involving extensive overlapping issues.  If the Court declines to transfer to Delaware, then HTC respectfully requests the Court transfer these claims to the Northern District of California, which is unquestionably more convenient for the parties and third-party witnesses, and where Apple currently asserts three of the six patents in suit here against Samsung Electronics Company.  Either Delaware or Northern California would be a far more appropriate venue for these claims.

## II.        BACKGROUND

### A.        Neither Apple nor HTC have any connection to the Southern District of Florida.

Apple's desire to expand the Motorola/Apple litigation in this district by adding counterclaims against a new unrelated party is curious given that only seventeen months ago it was seeking to transfer this litigation out of Florida, citing its lack of connection to the forum and the relative inconvenience of litigating here.  *See* Decl. of Rebekah Punak in Supp. of HTC Defs. Mot. to Transfer (hereafter "Punak Decl."), Ex. S.  Apple is a California corporation, headquartered in Cupertino, California.  *See* Apple's Answer, Affirmative Defenses and Counterclaims (Dk. 95) (hereafter "Counterclaims"), ¶ 161.  As emphasized in its motion to

2

transfer, none of Apple's potential witnesses or sources of evidence is likely to be located in Florida. Punak Decl., Ex. S, 8-9. Indeed, none of the Apple patents asserted in *any* jurisdiction list an inventor residing in Florida. *Id.* at 9.

HTC likewise has no meaningful connection to the Southern District of Florida and none of its potential witnesses or sources of evidence is likely to be located here. The HTC Defendants are variously incorporated in Taiwan, Washington and California. Decl. of Stephanie Bariault in Support of HTC Counterclaim Defs. Mot. To Transfer (hereafter "Bariault Decl."), ¶ 2. HTC America's headquarters, which are also HTC's principal U.S. operations, are in Bellevue, Washington. *Id.* HTC's sales, marketing, and product support activities targeted to the American market are managed from the Bellevue office. *Id.* ¶ 3. The potentially relevant HTC documents are located primarily in Taiwan, Washington, and California, and none are in Florida. *Id.* ¶ 8. Apple has alleged venue solely based on HTC's products being sold within this District. Counterclaims, ¶¶ 169, 170.

**B.      Apple and HTC are involved in related, ongoing litigation in the District of Delaware.**

Prior to Apple's March 12, 2012 counterclaims, HTC had no involvement in the proceedings between Motorola and Apple before this Court. For the past two years, however, Apple and HTC have been litigating numerous patent claims in the District of Delaware. On March 2, 2010, Apple filed its first two actions against HTC Corporation and its related entities in Delaware, alleging that HTC's smartphones infringed twenty of Apple's patents, and over the next year and a half Apple brought two additional patent actions against HTC in Delaware.[1]

---

[1]*Apple v. HTC et al.*, No. 10-CV-00166 (D. Del. March 2, 2010) (hereafter "*Delaware I*"), *Apple v. HTC et al.*, No. 10-CV-00167 (D. Del. March 2, 2010) (hereafter "*Delaware II*"). *Apple v. HTC et al.*, No. 10-CV-00544 (D. Del. June 21, 2010) (hereafter "*Delaware III*"); *Apple v. HTC et al.*, No. 11-CV-00611 (D. Del. July 11, 2011) (hereafter "*Delaware IV*") (hereafter

HTC, in turn, filed an action against Apple in the District of Delaware on September 7, 2011.[2]

In total, Apple has asserted twenty-six patents against HTC in Delaware and HTC has asserted

seven patents against Apple.  *Delaware I*, Dk. 1; *Delaware II*, Dks. 38, 48; *Delaware III*, Dk. 1;

*Delaware IV*, Dk. 1; *Delaware V*, Dk. 1.  All of the Delaware Actions are before Chief Judge

Sleet.  *Id.*

    Not only did Apple choose Delaware as the forum in which to assert its patents against

HTC's smartphones, it vigorously resisted HTC's efforts to transfer the actions to another forum.

On three occasions, HTC requested that the Delaware Actions be transferred to Apple's home

district, the Northern District of California.  *See Delaware I*, Dk. 9; *Delaware II*, Dk. 9;

*Delaware III*, Dk. 10.  In opposing transfer, Apple emphasized "the efficiencies that will result

from one court overseeing and coordinating these cases."  *Delaware III*, Dk. 14, at 1.  Apple

unequivocally stated its preference that the District of Delaware, in particular, oversee its

litigation against HTC, stating "[t]his Court is best suited to coordinate these cases so that

schedules do not conflict and, most importantly, *to avoid inconsistent rulings*."  *Id.* (emphasis

added).

    In conjunction with its proceedings against HTC in district court, Apple brought two

actions against HTC in the ITC, in which it asserted fifteen of the twenty-six patents at issue in

the Delaware Actions.[3]  Because of the overlap between the ITC and district court actions, Chief

Judge Sleet stayed the Delaware Actions pending resolution of the parties' disputes in the ITC.

---

collectively the "Delaware Actions").

[2]*HTC v. Apple*, No. 1:11-cv-00785 (D. Del. Sept. 7, 2011) (hereafter "*Delaware V*").

[3]*In re Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation Nos. 337-TA-710, 337-TA-797 (hereafter collectively the "ITC Actions").  Apple subsequently dropped six of the ten patents initially asserted in ITC Case No. 337-TA-710.  *See In re Certain Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, (Order Nos. 41, 92, 117).

*See* Punak Decl., Exs. A, R.  In his stay order, Chief Judge Sleet specifically noted that "there is sufficient overlap in subject matter among the patents at issue that the court, parties, and witnesses would benefit from trying these matters simultaneously upon resolution of the ITC proceedings."  *Id.*, Ex. A, 6 n.16.

### C.  The patents asserted in the Delaware Actions involve technologies, inventors, and patent counsel in common with those asserted here.

All of the patents asserted against HTC in this action, like the patents at issue in Delaware, target HTC's smartphones. *Compare* Counterclaims, ¶¶ 324, 330, 336, 342, 348, 354 *to Delaware I*, Dk. 1, ¶ 11; *Delaware II*, Dk. 38, ¶ 10; *Delaware III*, Dk. 1, ¶ 13; *Delaware IV*, Dk. 1, ¶ 11.  Of the twenty-three allegedly infringing HTC products identified in Apple's Answer and Counterclaims, all but five have been identified as allegedly infringing products in Apple's discovery responses in the Delaware Actions.  Counterclaims, ¶¶ 324, 330, 336, 342, 348, 354; Punak Decl., Ex. J.  Four of the five products identified as accused products in this action but not in the Delaware Actions were released in the United States after Apple served the relevant discovery responses in the Delaware Actions, and one was never released in the United States. Bariault Decl., ¶¶ 15-19.

Apple's assertions against HTC in Delaware and in this Court share much in common.  One of the patents asserted by Apple in Delaware—the 7,657,849 patent—is the parent of the 8,046,721 patent, asserted by Apple against HTC in this action.  *See* Punak Decl., Exs. B ('849 Patent), C ('721 Patent).  Apple also has asserted the '849 patent against Motorola in this action. Counterclaims, ¶¶ 316-321.  The '849 and '721 patents derive from the same patent application and thus share identical inventors, specifications, figures, and even abstracts.  *Compare* Punak Decl., Ex. B ('849 Patent) *to* Ex. C ('721 Patent).  Both patents purport to claim a method for unlocking an electronic device by moving an unlock image across a touch sensitive display.  *Id.*,

Ex. B ('849 patent), col. 1:66-2:8; Ex. C ('721 patent), col. 2:3-12.  Many of the same claim terms are used in both patents, including "unlock image," "graphical, interactive user-interface object," and "user-interface lock state."  *Compare* Ex. B ('849 patent), col. 19:21, 19:23-24, 19:20 *to* Ex. C ('721 patent), col. 19:26, 20:3-4, 20:21.  Only the claims of the '849 and '721 differ and those "claims must be read in view of the specification, of which they are a part."  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (citations omitted).

Additionally, five of the six patents asserted against HTC in this action specifically relate to various aspects of the graphical user interface of portable electronic devices with touch screens, like many of the patent accusations in Delaware.  *Compare* Dk. 27, Exs. J-O *to* Punak Decl. Exs. D-F, I.  The overlap in technologies at issue is illustrated by the PTO patent classifications assigned to these patents.[4]  As shown in the table below, seven of the patents asserted in the Delaware Actions have primary or secondary classifications in common with the patents in suit:

---

[4] The patent classification system is designed by the PTO to "organiz[e] all U.S. patent documents . . . into relatively small collections based on common subject matter."  *See* "Overview of the U.S. Patent Classification System (USPC)," U.S.P.T.O. (June 2011) (available at http://www.uspto.gov/patents/resources/classification/overview.pdf), § 1.1.  All patents are "assigned one, and only one, principal mandatory classification, known as the Primary Classification….  Other noninvention information thought to have particularly good search value may be assigned a discretionary [Secondary Classification] by the person classifying the documents."  *Id* at §§ 1.4.5, 1.4.6.

| | Classification 715/781[5] | Classification 715/863[6] | Classification 345/173[7] | Classification 345/179[8] |
|---|---|---|---|---|
| **Patents In Suit** | | | | |
| '891 Patent | Primary | | | |
| '721 Patent | | Primary | Secondary | Secondary |
| '332 Patent | | Secondary | | |
| **Patents Asserted in Delaware** | | | | |
| '949 Patent | | | Primary | |
| '849 Patent | | Primary | Secondary | Secondary |
| '331 Patent | Secondary | | | |
| '381 Patent | | Secondary | | |
| '859 Patent | | | Primary | |
| '564 Patent | | | | Primary |
| '129 Patent | | | Primary | Secondary |
| '915 Patent | Primary | | Secondary | |

Moreover, of the twelve inventors listed on the patents asserted against HTC in this action, *eight* are listed as inventors on the patents at issue in the Delaware Actions.[9]  The same

---

[5] Patent classification 715/781 covers data processing means or steps wherein user "interactions are constrained to one or more portions or regions of the display, which may display all or part of their related information."  Punak Decl., Ex. L at 715-1, 715-17.

[6] Patent classification 715/863 covers data processing means or steps wherein "a path or shape described by user input is indicative of a desired operation."  *Id*, Ex. L at 715-1, 715-17.

[7] Patent classification 345/173 covers methods for data processing for visual presentation wherein "the peripheral input device includes a planar touch sensor which determines the position of a touch."  Punak Decl., Ex. L at 345-1, 345-22.

[8] Patent classification 345/179 covers methods for data processing for visual presentation "wherein the operator uses a handheld pointer to input positional information data to the display device."  Punak Decl., Ex. L at 345-1, 345-23.

[9] Among the inventors listed on the patents Apple asserts against HTC in this case are Steve

firm that prosecuted three of the patents at issue here also prosecuted three of the patents at issue in the Delaware Actions.[10]

### D. The Northern District of California is Apple's home district and has significant other connections to the claims asserted here against HTC.

The Northern District of California is the logical center of gravity for the witnesses and documentary evidence in this case. Apple is headquartered there, in Cupertino, CA. Counterclaims, ¶161. Of Apple's twelve inventors, all but one were in the Northern District of California as of the issuance of the patents, and they all appear still to be located in that district. Benson Decl., ¶¶ 2-22, Exs. 1-12. It is unlikely any Apple witness or documentary evidence is outside the Northern District of California apart from that one inventor.

Furthermore, Apple has already asserted four of the six patents in suit here in claims against Samsung in the Northern District of California. It first asserted one of the patents over a year ago. *See* Punak Decl., Ex. M, ¶¶ 215-220.[11] Then on February 8, 2012, only a month before it filed its claims against HTC in this Court, Apple filed another action against Samsung

---

Lemay, Greg Christie, Marcel Van Os, Imran Chaudri, Bas Ording, Scott Forstall, Scott Herz, and Freddy Allen Anzures. Dk. 27, Exs. J-L, O. Messrs. Lemay, Christie, Van Os and Ording are listed as inventors on Patent No. 7,479,949 patent, asserted by Apple against HTC in *Delaware II*. *See* Punak Decl., Ex. I ('949 patent). Mr. Ording is listed as an inventor on Patent Nos. 7,362,331 and 7,469,381 patents, also asserted by Apple against HTC in *Delaware II*. *See* Punak Decl., Exs. E ('331 patent), F ('381 patent). Messrs. Lemay, Christie, Van Os, Chaudhri, Ording, Forstall and Anzures are listed as inventors on the '849 patent, asserted by Apple against HTC in *Delaware III*. *See* Punak Decl., Ex. B ('849). Mr. Herz is a listed as an inventor of Patent No. 7,844,915 patent, asserted by Apple against HTC in *Delaware IV*. *See* Punak Decl., Ex. D ('915 patent).

[10] The law firm of Morgan, Lewis, & Brockius LLP served as prosecution counsel for the '721, '172, and '760 patents asserted against HTC in this action. Dk. 27, Exs. J, L, N. The same firm prosecuted the '381 and '949 patents, asserted in *Delaware II*, and the '849 patent, asserted in *Delaware III*. *See* Punak Decl., Exs. B ('849 patent), F ('381 patent), I ('949 patent).

[11] Recently, following discovery and claim construction on its infringement allegations, Apple and Samsung entered into a voluntarily stipulation dismissing this claim without prejudice. *See* Punak Decl., Ex. O.

in the Northern District of California in which it asserted three more of the patents at issue here. *Id.*, Ex. N, ¶¶ 30-47.

As for HTC, although the Northern District of California is not its home district, it is far more convenient than the Southern District of Florida by any measure. One of the HTC defendants, One & Company Design, Inc., has its principal place of business in San Francisco, California. Counterclaims, ¶ 165. In total, HTC has approximately 35 employees in two San Francisco, CA offices, the majority of whom focus on the design of HTC devices. Bariault Decl., ¶ 4. These offices also have design documents related to HTC products. *Id.* The other HTC defendants consist of the parent company, based in Taiwan, and two United States subsidiaries, both based in Bellevue, WA. *Id.* ¶ 2. A large portion of engineering and design is done in Taiwan, and the remainder is done in Washington and Northern California. Bariault Decl., ¶ 8. Manifestly, San Francisco is more convenient to both Taiwan and Washington than is Miami. HTC maintains no engineering, product design, or customer support facilities in Florida, nor does it maintain any design documents in Florida. *Id.*

Likely third party witnesses will also find the Northern District of California much more convenient. In particular, to the extent Apple accuses features of HTC phones that are attributed to the Android platform (as distinct from HTC's own development), virtually all of the relevant documents and witnesses are located in the Northern District of California. Android was developed first at Android, Inc., based in Palo Alto, CA, and then acquired by Google, based in Mountain View, CA. Punak Decl., Ex. P, ¶¶ 3, 4. All development work on Android occurred in Northern California's Silicon Valley. *Id.* ¶¶ 6-8. Moreover, Google's records regarding its interactions with makers of Android smartphones, and the personnel who interact with HTC concerning devices using Android, are all located in Mountain View, CA. *Id.* ¶6.

9

## III.     ARGUMENT

Under 28 U.S.C. § 1404(a), a district court may transfer a civil case to another district

"[f]or the convenience of parties and witnesses, in the interest of justice."  Regional circuit law

governs transfers of patent disputes sought under § 1404(a).  *See Storage Tech. Corp. v. Cisco*

*Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (citations omitted).  To determine whether transfer

is appropriate under § 1404(a), a two-part test is applied.  First, transfer requires that the claims

"might have been brought" in the transferee venue.  *Jewelmasters, Inc. v. May Dep't Stores Co.*,

840 F. Supp. 893, 894 (S.D. Fla. 1993).  The inquiry then turns to whether the litigation would

more conveniently proceed and the interests of justice be better served in the transferee venue,

taking into consideration the following public and private factors:  (1) the convenience of the

witnesses; (2) the location of relevant documents and the relative ease of access to sources of

proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of

process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a

forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum;

and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### A.     The claims against HTC should be transferred to the District of Delaware.

#### 1.     Apple could have brought its claims against HTC in the District of Delaware.

Given the number of patent actions Apple has brought against HTC in the District of

Delaware, Apple can hardly dispute that its claims against HTC could have been brought in that

forum.  Federal district courts, including the District of Delaware, have subject matter

jurisdiction over patent claims under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Apple has

admitted that the District of Delaware has personal jurisdiction over it, and thus venue also is

proper in that court.  *See Delaware V*, Dk. 7, ¶ 4; *Trintec Indus., Inc. v. Pedre Promotional*

*Prods. Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate

defendant exists whenever there is personal jurisdiction.").  And HTC does not contest that the

District of Delaware has personal jurisdiction over it by virtue of its sale of accused products in

that District.

**2.     The public-interest factors weigh heavily in favor of transfer to the District of Delaware.**

**a.     The first-filed rule requires transfer to the District of Delaware.**

The purpose of the first-filed rule is to eliminate unnecessary burdens on federal courts,

promote uniformity in the judicial system, and discourage improper litigation tactics such as

forum shopping.  *See Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993),

*overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137 (1995);

*Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005).[12]  The rule provides

that where, as here, "two actions involving overlapping issues and parties are pending in two

federal courts, there is a strong presumption across the federal circuits that favors the forum of

the first-filed suit under the first-filed rule." *Manuel*, 430 F.3d at 1135.  The issues need not be

identical in the two actions for the first-filed rule to apply.  *See United States v. 22.58 Acres of*

*Land*, No. 2:08-cv-180, 2010 WL 431254, *5 (M.D. Ala. Feb. 3, 2010); *Aventis Pharm. Inc. v.*

*Teva Pharm. USA Inc.*, No. 2:06-CV-469, 2007 WL 2823296, *2 (E.D. Tex. Sept. 27, 2007)

---

[12] Federal Circuit precedent applies to the question of how to apply the first-filed rule, *see Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  There is, however, "little practical difference between the law of the Eleventh Circuit and the law of the Federal Circuit" on this issue.  Order re Mot. to Change Venue, *Motorola v. Apple*, Case No. 1:10-cv-23580 (S.D. Fla. April 24, 2011), Dk. 85, at 10.

(granting accused infringers' motion to transfer where first-filed action involved same accused products but different patents).

Apple's Delaware Actions are the "first-filed" actions with respect to Apple's claims against HTC in this Court.  Both the parties and issues in the Delaware Actions overlap with Apple's claims against HTC here.  First, HTC Corporation, HTC America, and Apple are parties to both sets of litigation.  Second, the near-complete overlap in accused products suggests that at least similar liability-related evidence, and identical damages-related evidence regarding the accused HTC products are likely to be presented in both sets of litigation.  Third, as discussed above, the patents asserted in the Delaware Actions involve some of the same claim terms, inventors, patent counsel, and technologies as the patents asserted against HTC in this action. The Delaware Actions thus inevitably will involve similar and in some instances identical issues of claim construction, invalidity, and enforceability.

While the first-filed rule is not absolute, no exceptions apply here.  Exceptions to the first-filed rule have been made where circumstances suggest forum shopping or where the first-filed forum lacks jurisdiction over all necessary or desirable parties.  *See Manuel*, 430 F.3d at 1136; *Genentech*, 998 F.2d at 938.   "There must ... be sound reasons that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938.  Given that Apple— not HTC—selected the District of Delaware as the forum in which to litigate the first-filed actions, however, there can be no colorable concern that the transferee forum is the result of HTC's forum shopping or that it would be unduly inconvenient to Apple.

> **b.** **Considerations of judicial economy and the interests of justice strongly favor transfer.**

Even apart from the first-filed rule, transferring this action to the District of Delaware will promote judicial economy and the interests of justice.  Numerous courts have observed that

forcing a party to defend itself against overlapping infringement allegations in multiple forums is both inefficient and unfair. *See*, *e.g.*, *SOC-USA, LLC v. Office Depot, Inc.*, No. 09-80545, 2009 WL 2365863, *4 (S.D. Fla. July 30, 2009) (granting transfer where "it would be more expeditious to try all claims involving the same parties and issues in the same forum."); *Quantum Catalytics, LLC v. VantagePoint Venture Partners*, No. H-07-2619, 2008 WL 5272483, *3 (S.D. Tex. Dec. 16, 2008) ("Pursuant to no logical analysis can it be said that utilizing the resources of two courts to resolve the same issues involving the same parties is efficient."); *Aventis Pharm.*, 2007 WL 2823296, at *2 (granting transfer where litigation in another forum involved "[t]he same parties," "[t]he same theory of inducement" and "the identical product . . . accused of infringement").

The risk of inequity is particularly great where, as here, a patentee asserts patents from the same patent family against the same party, and based on the same accused products in multiple forums. In these circumstances, courts routinely grant transfer. *See*, *e.g.*, *SOC-USA*, 2009 WL 2365863, *2–*4; *Augme Tech., Inc. v. Gannett Co., Inc.*, No. 3:11-CV-282, 2011 WL 3207118, at *4-6 (E.D. Va. July 26, 2011); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 776-77 (D. Md. 2009). In *Augme*, for example, the patentee filed an initial action against several defendants in the Southern District of New York. *Augme*, 2011 WL 3207118, at *1-3. Four years later, the patentee instituted another action against some of the same defendants in the Eastern District of Virginia, asserting two related patents. *Id.* In granting the alleged infringer's motion to transfer the second action to New York, the court observed:

> [T]he interests of justice weigh heavily in favor of transfer. First, the patents-in-suit are closely related to the patents at issue in the New York Litigation. They arise from the same patent application; the ′691 Patent is the parent to the ′721 Patent; the ′636 Patent is the parent to the ′690 Patent . . . . In this case, the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. Although the New York Litigation and the instant case may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents

could preserve time and resources.

*Id.* at *4-6 (internal quotations and citations omitted).

Transferring the claims against HTC to Delaware will promote judicial economy and justice by allowing the parties and the court to coordinate discovery among the various Apple/HTC actions, avoid re-litigating overlapping issues of claim construction, (non)infringement, (in)validity, and (un)enforceability, and mitigate the danger of inconsistent judgments.  Even Apple has praised the efficiencies to be gained by coordinating all pending litigation between two parties in a single court, lauding "the obvious advantages of adjudicating the parties' claims in a single forum." Punak Decl., Ex. S, at 3.  And in opposing transfer of the Delaware Actions to California, Apple praised "the efficiencies that will result from one court [the District of Delaware] overseeing and coordinating" the various claims asserted against HTC. *Id.*, Ex. Q at 1.

In contrast, there is nothing efficient or equitable about Apple's attempt to cram HTC into a lawsuit with Motorola that has been pending for over a year and a half, in which claim construction on some of the patents in suit has already been completed, in which the vast majority of patents in suit are not asserted against HTC, and that does not otherwise concern any HTC products.

### c.    Apple's attempt to subvert the stay in the Delaware Actions is improper.

As a result of Apple's concerted efforts to have its claims against HTC litigated in the District of Delaware, Chief Judge Sleet has spent two years coordinating the Delaware Actions. He has given careful consideration to the best way to manage the morass of assertions by Apple and he has ruled on the best way to coordinate the district court actions with the proceedings taking place in the ITC.  By filing new claims against HTC in a different court alleging that the

same products infringe related patents, Apple is improperly attempting to avoid the stay imposed

by Chief Judge Sleet.  But Apple's desire to avoid Chief Judge Sleet's stay is not a legitimate

reason to impose upon HTC and the judicial system the costs of litigating overlapping disputes

between the same parties in two forums.  *See Sorensen v. Phillips Plastics Corp.*, No. C-08-

03094, 2008 WL 4532556, *2-3 (N.D. Cal. Oct. 9, 2008) (rejecting patentee's argument that case

should not be transferred to forum of first-filed action because the court had stayed, in view of a

PTO reexamination, 17 other actions the patentee had brought on that patent); *Aventis*

*Pharmaceuticals*, 2007 WL 2823296, *2 (granting motion to transfer where it appeared patentee

"filed suit in this forum because it was disappointed with Judge Greenaway's ruling on the

motion for preliminary injunction"); *Kapco Mfg. Co., Inc. v. C & O Enter., Inc.*, 108 F.R.D. 55,

56 (N.D. Il. 1985) (transferring action to first-filed forum and noting "[a]lthough this Court

appreciates Kapco's interest in seeking a more favorable forum, that is not an interest protected

by the Federal Rules of Civil Procedure or by the local rules of this district.").

> **3.      The private-interest factors weigh heavily in favor of transfer to the District of Delaware**

> **a.      Apple's choice of forum deserves little, if any, deference.**

By its own account, Apple has no meaningful connection to the Southern District of

Florida and so its choice of forum deserves little deference.  *See Cellularvision Tech. &*

*Telecomms., L.P. v. Alltell Corp.*, 508 F. Supp. 2d 1186, 1193 (S.D. Fla. 2007) ("[W]here a

plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and

it is considerably easier to satisfy the burden of showing that other considerations make transfer

proper."); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011).  Indeed,

given that Apple—not HTC—chose the District of Delaware as the venue in which to assert its

first-filed claims against HTC's smartphone technology, its choice of Florida as a forum in which to assert similar claims should be given no weight at all.

          **b.**        **The convenience of the parties weighs in favor of transfer.**

As Apple has acknowledged, the Southern District of Florida is not a particularly convenient place for it to litigate patent disputes.  Punak Decl., Ex. S, 8-9.  None of the relevant witnesses or documents are likely to be located in this district, and neither Apple nor HTC are headquartered or incorporated here.  While it is true that, three years ago, Delaware would not be particularly convenient for HTC, given the volume of litigation that HTC must contend with in that district already, all parties can gain efficiencies by trying these claims there.  Apple has no grounds to contest the convenience of Delaware, having argued that centralizing all of the litigation between two parties in a single forum will "undoubtedly reduce the overall costs incurred by both parties."  *Id.* at 9.  Absent transfer, HTC will be forced to engage in duplicative document collection and production efforts, produce many of the same witnesses multiple times, re-litigate overlapping issues of claim-construction, invalidity, and enforcement, and potentially face inconsistent evidentiary rulings and judgments.

Apple, no doubt, will complain that transfer will force it to litigate the same patents against Motorola and HTC in different forums.  But this is a problem entirely of Apple's making.  Over the past two years, Apple chose to assert the same and related patents against different parties in different forums, creating an inevitable likelihood that it will engage in some duplicative discovery.  Any burdens associated with this staggered, multi-venue strategy should be borne by Apple, not HTC.

**B.     If the Court declines to transfer to Delaware, the Court should transfer the claims against HTC to the Northern District of California.**

**1.     Apple could have brought its claims against HTC in the Northern District of California.**

There is no question Apple, headquartered within the Northern District of California, could have sued the HTC defendants there.  One defendant maintains its principal place of business in San Francisco, and the others regularly conduct business in the Northern District either directly or through subsidiaries.  Barriault Decl., ¶ 2.  Additionally, HTC products are sold throughout California  just as they are in Florida – the only basis on which Apple claims venue is proper here.

**2.     The private interest factors strongly favor the Northern District of California over the Southern District of Florida.**

The Northern District of California is overwhelmingly the more convenient forum for this litigation as compared to the Southern District of Florida.  As noted above, Apple's choice of this district carries no weight, and there are no known witnesses or documentary evidence in this district pertaining to the assertions against HTC.

By contrast, the Northern District of California is unquestionably the single district with the most significant connections to this litigation and the relevant evidence.  As Apple's home district, it is likely that most every Apple witness will be found there, other than the one inventor who lives in Texas. Benson Decl., ¶¶ 3-22, Exs. 1-12.  Known likely third-party witnesses include, for example, the developers of Android, who are based in the Northern District of California.  *Id.*, Ex. P.  Defendant One & Company Design, Inc. is based in San Francisco, and a number of HTC designers are in the San Francisco Bay Area.  HTC's parent is headquartered in Taiwan, and HTC America is based in Bellevue, WA.  Even if all HTC witnesses were to come from Taiwan or Bellevue rather than San Francisco, the Northern District of California is still

17

drastically more convenient for them than Miami.  There are nonstop flights from Taiwan to San Francisco, whereas travel to Miami requires a connection and an additional 7 hours.  Benson Decl, ¶¶ 24-26, Exs. 13-15.  Likewise, HTC's Washington State witnesses can get to San Francisco in about two hours flying time, whereas flights to Miami are almost six hours.  *Id.,* ¶¶ 27-28, Exs. 16-17.  Furthermore, because HTC has offices in the San Francisco Bay Area, employees from out of town who must attend trial can stay on top of their job responsibilities during non-court time by working out of HTC's local offices.  Bariault Decl., ¶ 14.

### 3.    The public interest factors favor the Northern District of California over the Southern District of Florida.

Although unlike Delaware, the first-filed rule does not apply to the Northern District of California, there are several public interest factors that make that district more appropriate than the Southern District of Florida.  Most importantly, the parties will have available to them mandatory process to compel many witnesses to appear at trial.  This includes, most obviously, the developers of the Android platform, but it may also include inventors who have left Apple but remain in the district.

Other relevant public interest factors include the local interest in having the dispute resolved at home.  *SOC-USA*, 2009 WL 2365863, *3.  Given Apple's headquarters within the Northern District of California, one HTC defendant, and the presence of many HTC employees within the district, and the presence of Android developers within the district, the Northern District of California has a far greater interest in this dispute than the Southern District of Florida.

Finally, three of the patents asserted against HTC are already pending in litigation Apple brought in the Northern District of California against Samsung, before District Judge Lucy Koh.  Although that case involves different products than this case (and therefore cannot be

consolidated with the claims against HTC), some efficiencies could be gained if the transferred HTC case were assigned to Judge Koh.

## IV.    CONCLUSION

For the reasons stated above and in HTC's motion to sever, this Court should sever the claims asserted against HTC in this action and transfer the severed action to the District of Delaware.  Alternatively, the Court should transfer the claims against HTC to the Northern District of California.

## V.    CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(A)(3), the undersigned certifies that counsel for HTC conferred with counsel for Apple counsel in an attempt to resolve by agreement the relief requested in this motion, but the parties were unable to do so.

Respectfully submitted,

Dated: June 9, 2012

CAREY RODRIGUEZ GREENBERG
O'KEEFE, LLP

By:  */s/ John C. Carey*
        John C. Carey

Florida Bar No. 78379
jcarey@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida  33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

KEKER & VAN NEST LLP
Brian L. Ferrall, Pro Hac Vice
bferrall@kvn.com
Leo L. Lam, Pro Hac Vice
llam@kvn.com
Rebekah L. Punak, Pro Hac Vice
rpunak@kvn.com
Simona Agnolucci, Pro Hac Vice
sagnolucci@kvn.com
633 Battery Street
San Francisco, CA  94111
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

*Counsel for Counterclaim Defendants HTC
Corporation, HTC America, Inc., One &
Company Design, Inc., and HTC America
Innovation Inc.*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2012, I electronically filed the foregoing document with the clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ John C. Carey*
John C. Carey

## SERVICE LIST

Motorola Mobility, Inc. v. Apple Inc.
Case No. 12-cv-20271-Scola/Bandstra
United States District Court for the Southern District of Florida

***Counsel for Plaintiff/Counterclaim Defendant Motorola Mobility, Inc.:***
Edward M. Mullins
emullins@astidavis.com
Annette C. Escobar
aescobar@astidavis.com
ASTIGARRAGA DAVIS MULLINS & GROSSMAN
701 Brickell Avenue, 16th Floor
Miami, FL 33131-2847
Telephone: 305-372-8282
Facsimile: 305-372-8202

***Of Counsel:***
David A. Nelson
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Telephone: 312-705-7400
Facsimile: 312-705-7401

666940.04

David A. Perlson
davidperlson@quinnemanuel.com
Graham Pechenik
grahampechenik@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Facsimile: 415-875-6700

Marshall M. Searcy, III
marshallsearcy@quinnemanuel.com
Matthew Korhonen
mattkorhonen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Facsimile:  213-443-3100

Raymond N. Nimrod
raynimrod@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100

***Counsel for Defendant/Counterclaim Plaintiff Apple Inc.:***
Christopher R. J. Pace
christopher.pace@weil.com
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: 305-577-3100
Facsimile: 305-374-7159

***Of Counsel:***
Mark G. Davis
mark.david@weil.com
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington DC 20005
Telephone: 202-682-7000
Facsimile: 202-857-0940

666940.04

Anne M. Cappella
anne.cappella@weil.com
Jill J. Schmidt
jill.schmidt@weil.com
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: 650-802-3000
Facsimile: 650-802-3100

Azra Hadzemehmedovic
azra@tensegritylawgroup.com
Matthew D. Powers
matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich
paul.ehrlich@tensegritylawgroup.com
Steven S. Cherensky
steven.cherensky@tensegritylawgroup.com
Monica Mucchetti Eno
Monica.eno@tensegritylawgroup.com
Stefani C. Smith
Stefani.smith@tensegritylawgroup.com
TENSEGRITY LAW GROUP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: 650-802-6000
Facsimile: 650-802-6001

Christine Saunders Haskett
chaskett@cov.com
Robert D. Fram
rfram@cov.com
COVINGTON & BURLING, LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: 415-591-6000
Facsimile: 415-591-6091

Robert T. Haslam
rhaslam@cov.com
COVINGTON & BURLING, LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: 650-632-4700
Facsimile: 650-632-4800

Kenneth H. Bridges
kbridges@bridgesmav.com
Michael T. Pieja
mpieja@bridgesmav.com
BRIDGES & MAVRAKAKIS, LLP
3000 El Camino Real
One Palo Alto Square
Palo Alto, CA 94306
Telephone: 650-804-7800