**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MOTOROLA MOBILITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | **Consolidated Cases** <br> Case No. 1:12-cv-20271-RNS <br> Case No. 1:10-cv-23580-RNS |
| APPLE INC., <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> MOTOROLA, INC., <br> MOTOROLA MOBILITY, INC., <br> HTC CORPORATION, <br> HTC AMERICA, INC., <br> ONE & COMPANY DESIGN, INC., <br> HTC AMERICA INNOVATION, INC., <br><br> Counterclaim Defendants. | |

**ORDER ON MOTION TO SEVER
AND MOTION TO TRANSFER VENUE**

THIS MATTER is before the Court on the Motion to Sever [ECF No. 83] and the Motion to Transfer Venue [ECF No. 97], both filed by Counterclaim Defendants HTC Corporation, HTC America, Inc., One & Company Design, Inc., and HTC America Innovation, Inc. For the reasons set forth below, both Motions are granted.

**Factual Background**

On January 24, 2012, Motorola Mobility, Inc. ("Motorola") filed a Complaint in the Southern District of Florida against Apple, Inc. ("Apple"), a California corporation, headquartered in Cupertino, California, asserting infringement of six patents. On March 12, 2012, Apple, by way of its amended counterclaims, sued various HTC corporations (collectively "HTC"), including HTC (a Taiwanese corporation), HTC America, Inc. (a Washington State Corporation), HTC America Innovation, Inc. (a Washington State Corporation), and One & Company Design, Inc. (a California corporation) for patent infringement. The patents Apple has asserted against HTC pertain to user interfaces and software for use on mobile devices and other products. HTC and Motorola are two distinct, competing entities; however, both use the Android operating system for their respective mobile devices. Apple states that "[its] infringement claims against HTC and Motorola cover functionalities of the Android platform and related applications, as well as HTC and Motorola devices that include and execute the Android software." Apple's Sever Resp. at 2, [ECF No. 93].

HTC and Motorola purchase the Android system for use in their respective devices, but do not manufacture or sell the Android system. Android is an "open source" code, thus it is intended to be customized, modified, and changed. For example, HTC claims that its devices have user interface features (*i.e.*, word recommendation, phone unlock, missed call notification features, etc.) that are either designed and developed by HTC or licensed from third parties. Sever Mot. at 2, 14; Sever Reply at 4-5. Conversely, Apple contends that "Android applications are programs that are installed on Android devices and utilize those devices' underlying Android software functionality." Apple's Sever Resp. at 3. Moreover, Apple claims that "Android's single application model is designed to allow the same application to run on a wide range of devices, from phones to tablets and beyond, including on different manufacturers' devices." *Id*.

Between March 2, 2010, and before Apple's March 12, 2012 counterclaims against HTC, Apple filed four actions in the District of Delaware ("Delaware Actions"),[1] alleging that HTC's smartphones infringed twenty-six Apple patents. In turn, HTC filed an action against Apple in

---

[1] *Apple v. HTC et al.*, No. 10-CV-00166 (D. Del. Mar. 2, 2010); *Apple v. HTC et al.*, No. 10-CV-00167 (D. Del. Mar. 2, 2010); *Apple v. HTC et al.*, No. 10-CV-00544 (D. Del. June 21, 2010); *Apple v. HTC et al.*, No. 11-CV-00611 (D. Del. July 11, 2011) (hereafter referred to as the "Delaware Actions").

the District of Delaware on September 7, 2011.[2] Additionally, Apple brought two actions against HTC in the International Trade Commission ("ITC"),[3] wherein it asserted fifteen of the twenty-six patents included in the Delaware Actions. Chief Judge Sleet of the District Court of Delaware is currently presiding over the Delaware Actions and has stayed the proceedings pending resolution of the ITC cases.   Apple's Trans. Resp. at 9-10.

All of the patents Apple has asserted against HTC in this action, like the patents in the Delaware Actions, target HTC smartphones.  *Compare* Counterclaims, ¶¶ 324, 330, 336, 342, 348, 354 *to* Delaware Actions.  HTC states in its Transfer Motion that one of the patents asserted by Apple in the Delaware actions ('849 Patent) is the parent of one of the patents asserted by Apple in this action ('721 Patent).   Trans Mot. at 5.   Furthermore, HTC states that "[t]he '849 and '721 patents derive from the same patent application and thus share identical inventors, specifications, figures, and even abstracts."   *Id*.

Presently before the Court are HTC's Motions to Sever and Transfer Venue. HTC asks the Court to sever Apple's claims against it from Apple's claims against Motorola. Upon severance, HTC also requests transfer of Apple's claims to the District of Delaware, "where they can be managed and litigated with at least four pending actions involving extensive overlapping issues."[4]   *Id*. at 2.

## Legal Standards

**I.   Severance**

Ordinarily, issues of joinder and severance are governed by the Federal Rules of Civil Procedure, specifically Rules 20, 21, and 42.[5]   As of September 16, 2011, however, joinder

---

[2]  *HTC v. Apple*, No. 1:11-CV-00785 (D. Del. Sept. 7, 2011).

[3]  *In re Certain Personal Data and Mobile Communications Devices and Related Software*, Investigation Nos. 337-TA-710, 337-TA-797.

[4]  In the alternative, if the severed claims are not transferred to the District of Delaware, HTC requests transfer to the Northern District of California. The propriety of transfer to the Northern District of California will not be analyzed because the District of Delaware appears to be an appropriate venue for these claims.

[5]  Under Federal Rule of Civil Procedure 20, a plaintiff may join claims against defendants if the claims "aris[e] out of the same transaction, occurrences, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."   Fed. R. Civ. P. 20(a)(2). Thus, a party seeking joinder under Rule 20 must establish two conditions: 1) a right to relief arising out of the same transactions or occurrence, or series of transactions or occurrences, and 2) some questions of

issues in patent cases are governed by the America Invents Act ("AIA"). *See* Leahy-Smith America Invents Act, 35 U.S.C. § 299. Under the AIA, accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if:

> 1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and 2) questions of fact to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299. The AIA makes clear that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." *Id*. The AIA adds a requirement to the first prong of Rule 20 that the transaction or occurrence must relate to the making, using, or selling of the same patented product or process. *Id*. Accordingly, joinder under the AIA is more stringent than joinder pursuant to Federal Rule 20. *See* H.R. Rep. No. 112-98, pt. 1, at 54 n.61 (2011). The Act was designed to address "problems occasioned by the joinder of defendants who have tenuous connections to the underlying disputes in patent infringement suits." *Id*.

## II. Transferring Venue

Requests to transfer venue are governed by federal statute, 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division where it might have been brought or to any district to which all parties have

---

law or fact common to all persons seeking to be joined. *See Id*. The central purpose of Rule 20 is to promote judicial efficiency and expedite the resolution of claims, thereby eliminating unnecessary additional lawsuits. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). Rule 21 provides, however, that "the court may at any time, on just terms, add or drop a party," and "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 42(b) also allows for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Thus, the district court is afforded discretion under Rules 21 and 42(b) to sever claims, drop parties, order separate trials or make such other orders as will prevent delay or prejudice.

consented." 28 U.S.C. § 1404(a). Although this is a patent action,[6] Eleventh Circuit law, rather than Federal Circuit law, applies to transfer venue motions such as this one. *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

The party seeking to transfer the case bears the burden to show that the plaintiff's choice of forum should be disturbed. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the district court, and once a trial judge decides that transfer of venue is justified for the convenience of the parties and witnesses and in the interest of justice, the ruling can be overturned only for clear abuse of discretion, and the presumption in favor of the district court judge is heavy. *See Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991). A two-pronged inquiry is employed to determine whether transferring venue is proper: first, the alternative venue must be one in which the action could originally have been brought by the plaintiff; and second, the court must balance private and public factors to determine if transfer is justified. *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 Supp. 2d. 1186, 1189 (S.D. Fla. 2007) (Moore, J.).

In the Eleventh Circuit, the following factors may be utilized to determine whether transfer is appropriate under the second prong of the transfer inquiry: (1) the convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the weight accorded a plaintiff's choice of forum; (6) the public interest; and (7) trial efficiency. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) (Gold, J.); *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (Moore, J.). The abovementioned factors are nonexclusive, meaning that the Court should consider any or all that are relevant to the facts at hand. *See Cellularvision Tech. & Telecomm., L.P. v. Cellco Partnership*, 2006 WL 2871858, at *2 (S.D. Fla. Sept. 12, 2006) (Dimitrouleas, J.).

---

[6] In patent cases, the Court ordinarily applies the law of the Federal Circuit. *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).

## Legal Analysis

### I. Severance

HTC's severance motion falls within the purview of the AIA because Apple's claims against HTC were filed after the AIA's effective date of September 16, 2011. *See* 35 U.S.C. § 299. The propriety of severance in this case hinges on the AIA's first requirement: whether the right to relief against HTC and Motorola arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process. *Id*. Determining whether a factual situation constitutes a "single transaction or occurrence" is conducted on a case by case, fact by fact, basis. *Brandywine Commc'n Techs., LLC. v. Apple Inc.*, 2012 WL 527057, at *2 (M.D. Fla. Jan. 24, 2012), *report and recommendation adopted by* 2012 WL 527180 (M.D. Fla. Feb. 17, 2012).

On June 19, 2012, Judge Moore of the Southern District of Florida issued an order denying severance in a patent action that was filed after the enactment of AIA. *See Omega Patents, LLC v. Skypatrol LLC*, 2012 WL 23339320 (S.D. Fla. June 19, 2012) (Moore, J.). The two defendants in *Omega Patents* included Enfora, the upstream manufacturer of an alleged infringing product, and Skypatrol, the downstream purchaser, who reconfigured, modified, and rebranded the same product. *Id*. at *2. Judge Moore held that joinder was appropriate in *Omega Patents* because the "[p]laintiff's claims for infringement ar[o]se out of the same series of transactions or occurrences in that Enfora manufactures a product that allegedly infringes the patents in question and then provides the product to Skypatrol, who reconfigures, modifies, and rebrands the same product—using information and documentation provided by Enfora for distribution under its own name." *Id*.

The instant case is distinguishable from *Omega Patents* based on the absence of a relationship between HTC and Motorola. HTC and Motorola are both downstream purchasers of the Android software; neither company sells or distributes Android to one another. Moreover, HTC and Motorola are competitors, not collaborators, in the smartphone market.

Apple argues in its Severance Response that HTC's and Motorola's membership in the Open Handset Alliance ("OHA") classifies as joint development of the Android software. Apple Sever Resp. 9-10. The Court finds such a connection too tenuous, however. The OHA is merely an industry association consisting of over 84 companies that promote products and

services that use the Android platform. Courts have held that membership in a broad based industry association does not support joinder because "[s]imply being a member of an industry organization does not indicate that [d]efendants have jointly designed, developed, manufactured, or sold their [a]ccused [p]roducts." *Body Science LLC v. Boston Scientific Corp.*, 2012 WL 718495, at *5 (N.D. Ill. March 6, 2012).

The first element of AIA, section 299, also requires that the alleged acts of infringement concern "the same accused product or process." 35 U.S.C. § 299(a)(1). Section 299's language makes joinder in patent cases more difficult than traditional joinder under Rule 20. Given the AIA's infancy, interpretations of the "*same* accused product or process" are scarce, if not wholly absent from the case law, and the AIA's legislative history provides minimal guidance. *See* Tracie L. Bryant, *The America Invents Act: Slaying Trolls, Limiting Joinder*, 25 Harv. J.L. & Tech. 673, 692 (2012) ("[C]ourts must define "same" as used in the first prong of the new rule and determine what additional element(s), beyond alleged infringement of a common patent, is required for joinder to be proper.").

In passing the AIA, Congress adopted the majority construction of Rule 20 set forth in *Rudd v. Lux Products Corp.*, 2011 WL 148052 (N.D. Ill. January 12, 2011). H.R. Rep. No. 112-98, pt.1, at 55 n.61. The *Rudd* court held that "[s]imply alleging that Defendants manufacture or sell *similar* products does not support joinder under Rule 20." *Rudd*, 2011 WL 14805, at *3 (rejecting the minority interpretation of Rule 20 set forth in *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004)) (emphasis added). The minority construction of Rule 20, which was explicitly abrogated by section 299 of the AIA, allowed plaintiffs in patent actions to join multiple defendants on the sole basis that they allegedly used the same patented invention in different products, in competing products, or in products that were related in some technical aspect. *See, e.g., MyMail*, 223 F.R.D. at 456-57.

Applied here, the AIA's plain language and legislative history suggest that the accused HTC and Motorola products are not sufficiently the "same." Apple states that "[its] infringement case includes claims against specific software – including applications such as Maps and Play Store – that is present in the same form on both HTC's and Motorola's accused devices." Apple's Sever Resp. at 1. But these accused devices are not the same; HTC and Motorola are competitors in the smartphone industry and produce different smartphones that run on at least somewhat modified Android software. The mere use of the Android platform by

these competitors, and the mere allegation that the same or similar patents were infringed, does not satisfy the joinder standards of the AIA. Accordingly, the Court finds that HTC is entitled to severance.

## II. Transferring Venue

### A. First Prong

Both parties concede that Apple's claims against HTC could have been brought in the District of Delaware, as HTC's national distribution of Android smartphones satisfies personal jurisdiction in nearly every district. Trans. Mot. at 11-12. As is evident through the filing, and pendency, of the Delaware Actions, Apple could have filed these claims in the District of Delaware initially. Accordingly, the remainder of the transfer analysis pertains to factors within the second prong of the transfer venue analysis.

### B. Second Prong

*1. Convenience of Parties*

Although it is undisputed this Court has personal jurisdiction over Apple's infringement claims against HTC, neither party is incorporated or headquartered in Florida; Apple is a California corporation and HTC consists of a Taiwanese corporation, two Washington corporations, and a California corporation. Additionally, the parties are engaged in ongoing, although currently stayed, litigation in the District of Delaware. If Apple's claims against HTC were to remain in this District, Apple would be required to litigate on three separate fronts: 1) Apple's infringement action against Motorola in this District; 2) Apple's infringement action against HTC in this District; and 3) the Delaware Actions. On the other hand, transferring Apple's claims against HTC to the District of Delaware may allow them to be joined with the Delaware Actions, in whole or in part, or perhaps consolidated for discovery purposes. Moreover, HTC has no other cases in this District and both HTC and Apple are already set to expend a vast amount of resources and time litigating the Delaware Actions. Transferring these claims to the District of Delaware will therefore benefit both Apple and HTC by confining the parties' disputes to one forum. Accordingly, the "convenience of the parties" factor weighs in favor of transfer to the District of Delaware.

### *2. Convenience of the Witnesses*

Convenience of the witnesses is given more weight than convenience of the parties when considering transfer of venue. *Motorola Mobility Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011). Just as the severance motion effected the "convenience of parties" factor in this action, the "convenience of the witnesses" factor is also impacted. Both parties will undoubtedly use numerous witnesses in the Delaware Actions given the complexity and document intensive nature of that litigation. While the Court cannot know at this point in time the precise degree of overlap, certain witnesses likely will be less inconvenienced if the claims in this action are transferred to the District of Delaware. For example, HTC points out that "[e]ight of the twelve named inventors on the patents asserted against HTC in this action are also named inventors on the patents asserted in Delaware." Trans. Reply at 1,8. Furthermore, HTC correctly points out that "inventors will be deposed in connection with the Delaware Actions regardless of whether Apple's claims against HTC in this action are severed and transferred." *Id.* Thus, the "convenience of the witnesses" appears to weigh in favor of transfer.

### *3. Apple's Choice of Forum*

Generally, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to less consideration. *Motorola Mobility*, 804 F. Supp. 2d at 1276. Moreover, where a plaintiff has chosen a forum that is not its home, only minimal deference is required and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *Cellularvision Tech. and Telecomm., L.P.*, 2006 WL 2871858, at *3. Apple contends that "though Florida is not Apple's home forum, it was the natural place for Apple to bring these claims, and Apple's choice to do so deserves deference." Apple's Trans. Resp. at 5. The Court disagrees. Apple's choice in this case deserves minimal deference. The Southern District of Florida is not Apple's home forum, and the events giving rise to Apple's claims did not arise

in Florida to the exclusion of other forums. Moreover, given Apple's timing in joining HTC in this action, Apple, which is armed with vast experience in patent law, should have been fully aware of the AIA, its effective date, and the heightened requirements for joinder. Yet, Apple has offered little argument against transfer outside of its insistence that the instant matter not be severed. The Court has already rejected those arguments and, so, finds no basis to accord Apple's forum choice much deference.

### *4. The Public Interest and Trial Efficiency*

In addition to the factors above, the Court must also consider "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interests of justice.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Some of the public interest factors include the court's familiarity with applicable law and considerations relating to judicial efficiency. *Motorola Mobility*, 804 F. Supp. 2d at 1278.

As compared to the Delaware court, this Court does not possess any greater familiarity with, or ability to apply, governing law. While this Court routinely applies Eleventh Circuit and Florida law, and, thus, might be said to possess greater familiarity with those bodies of law than courts sitting elsewhere, that fact is of no consequence here. In patent cases, the Court applies the law of the Federal Circuit, not the law of the Eleventh Circuit or Florida. Given the already pending Delaware Actions, this Court presumes that the Delaware court is well acquainted with, and fully capable of properly applying, Federal Circuit law to patent disputes like this one.

As to judicial efficiency, this factor also favors transfer. Apple argues that "the technologies at issue in this case and the Delaware [Actions] share only minimal overlap, [thereby] reducing any possible efficiencies gained from a transfer." Apple's Trans. Resp. at 8. Apple further suggests that "[w]hile the patents asserted against HTC here all relate to graphical user interface technologies, those at issue in Delaware include a variety of hardware and low-level system software technologies." *Id*. Although the patents at issue in the Delaware Actions do not directly overlap with the claims in the instant case, this does not necessarily weigh against transfer. In *Motorola Mobility*, for example, the court held transfer was proper despite "no direct overlap" between the claims brought in this District and those pending in another district. *Motorola Mobility*, 804 F. Supp. 2d. at 1278.

All of the patents asserted in this action, like the patents at issue in the Delaware Actions, target HTC's smartphones. Furthermore, the '849 Patent, which is the parent patent to the '721 Patent, "derive[s] from the same patent application …, thus share[s] identical inventors, specifications, figures and even abstracts." Trans. Mot. at 5. Judicial efficiency will be gained by transferring the instant claims asserted against HTC to the District of Delaware, as resources can be streamlined with the Delaware Actions. *See Motorola Mobility*, 804 F. Supp. 2d. at 1278 ("'[T]here is no overriding public interest that should require this [c]ourt to adjudicate satellite litigation here, especially when the resources required to adjudicate this case would be streamlined with the cases already pending in [another district].'").

The Court recognizes Apple's argument that "[t]he current procedural status of the Delaware [Actions] further reduces the chances that judicial efficiency would be gained by transfer. Although filed in early 2010, those cases were all in their infancy when stayed in December 2011, and remain so today." Apple's Trans. Resp. at 9-10. Contrary to Apple's suggestion, however, the fact of the stay and the early procedural posture of the Delaware Actions make transfer more appropriate, not less so, because the instant matter involving HTC is also at its infancy. *See Motorola Mobility*, 804 F. Supp. 2d at 1278 (Transfer of venue is appropriate, "especially when the resources required to adjudicate [a] case could be streamlined with the cases already pending in [another district]"). Consequently, the public interest and trial efficiency factors weigh in favor transfer.

### 5. Other Transfer Factors

The other factors used in the Eleventh Circuit to analyze transfer motions either weigh slightly in favor of transfer or are neutral. HTC states that their "potentially relevant … documents are located primarily in Taiwan, Washington, and California and none are in Florida." Trans. Mot. at 3. While Delaware is not significantly closer to these locales, both parties are already certain to bring numerous documents into court in Delaware. Thus, transferring Apple's claims against HTC to Delaware will allow both parties to arrange for all relevant documents to be simultaneously brought into court there. Moreover, modern methods of transportation and communication have largely ameliorated the burdens of moving discovery from place to place. Accordingly, the "relative ease of access to sources of proof" factor does not weigh against

transfer.  Lastly, the "locus of operative facts" factor is neutral because the facts that gave rise to these claims did not specifically occur in Delaware or Florida.

### Conclusion

HTC and Motorola did not collaborate or engage in joint development of the Android software. Thus, the right to relief between HTC and Motorola did not arise out of the same transaction, occurrence, or series of transactions or occurrences. Moreover, HTC and Motorola smartphones are not the "same accused products." Further, the asserted claims could have been brought in the District of Delaware and the factors in the second prong of the transfer analysis greatly weigh in favor of transfer.

Accordingly, it is hereby **ORDERED and ADJUDGED** that HTC's Motion to Sever is **GRANTED** and HTC's Motion to Transfer is **GRANTED.** The Clerk is directed to take all necessary steps to ensure the prompt transfer of the severed claims in this matter to the United States District Court for the District of Delaware.

**DONE and ORDERED** in chambers in Miami, Florida on July 31, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Magistrate Judge Bandstra
Counsel of record