# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:12-cv-20271-SCOLA

MOTOROLA MOBILITY LLC,

       Plaintiff,

   v.

APPLE INC.,

       Defendant.

---

APPLE INC.,

       Counterclaim Plaintiff,

   v.

MOTOROLA MOBILITY LLC,

       Counterclaim Defendant.

**JURY TRIAL DEMANDED**

**Consolidated Cases**

Case No. 1:10-cv-23580-SCOLA
Case No. 1:12-cv-20271-SCOLA

## MOTOROLA MOBILITY LLC'S SUR-REPLY *MARKMAN* BRIEF

# <u>TABLE OF CONTENTS</u>

 <u>Page</u>

I.      APPLE'S '050 PATENT ................................................................................................1

    A.      Apple Relies On Portions Of The Specification That Are Irrelevant To Construing The Term "Invocable Speed Reference" ................................................................2

    B.      Apple's Reliance On The Specification And Prosecution History Are Irrelevant To The Construction Of "Situational Location Of A User" ...................................6

II.     APPLE'S '332 PATENT ................................................................................................7

    A.      Apple Admits An "Application Object" Must "Visually Include" Information About An Application ................................................................................................7

    B.      "Display Object" Must Be Construed To Require A Graphical Representation .....7

III.    APPLE'S '760 PATENT ................................................................................................9

    A.      The Parties' Dispute Regarding The "Completely Substituting" Limitation In This Case Is Distinct From The *Apple v. Samsung* Case ................................................9

    B.      "Contact Object" Must Contain Contact Information, As Motorola Proposes........9

IV.     APPLE'S FUNCTIONAL CLAIM LIMITATIONS.....................................................11

    A.      Apple's New Supposed Structure For The '332 Patent Is Insufficient As A Matter Of Law ................................................................................................................11

        1.      Recitation Of The Words "Mobile Device" In Claim 13 Is Insufficient To Prevent The Application Of § 112 ¶ 6 To A Functional Claim ................11

        2.      Apple's Newly Cited Structure For The '332 Patent Is Insufficient .........15

    B.      Apple's Identification Of New Structure For Claim 10 Of The '760 Patent Is Purely Functional ................................................................................................19

        1.      None Of Apple's Proposed Corresponding Structure Is Linked To The Functions Described In Claims 10 And 11 ................................................19

        2.      None Of Apple's Proposed Corresponding Structure Discloses An Algorithm................................................................................................20

V.      MOTOROLA'S '072 PATENT........................................................................................22

    A.      Apple Lacks Support For Its Assertion That A "Mirrored Database" Must Be "Identical" ................................................................................................................22

    B.      Apple's New Authority Does Not Suggest That A "Database Including *One Of A* Parameter Status *And A* Mirrored Database" Requires *Both* ................................23

C.      Apple Mischaracterizes Motorola's And Its Own Proposed Construction For "Instruction Message That Corresponds To Spoken Instructions"........................24

VI.    CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008)..................................................................................10

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007)....................................................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 12-cv-00630 (N.D. Cal. Sept. 6, 2013) ...............................................................1, 9

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
  No. 2012-1531, 2013 U.S. App. LEXIS 16506 (Fed. Cir. Aug. 9, 2013) .........................22

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008)..................................................................11, 12, 20, 21

*B. Braun Med. Inc. v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997)...................................................................................19

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009)...................................................................................13

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012)..............................................................................18, 21

*Halliburton Energy Servs. v. M-I LLC*,
  514 F.3d 1244 (Fed Cir. 2008)......................................................................................2

*Honeywell v. Universal Avionics Sys. Corp.*,
  488 F.3d 982 (Fed. Cir. 2007).......................................................................................3

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008)..............................................................................13, 22

*Joao Bock Transaction Sys., LLC v. First Nat'l Bank*,
  2013 U.S. Dist. LEXIS 88404 (N.D. Ill. June 24, 2013) ................................................23

*Kao Corp. v. Unilever U.S., Inc.*,
  441 F.3d 963 (Fed. Cir. 2006).......................................................................................6

*LG Elec. Inc. v. Bizcordpsm Elecs. Inc.*,
  453 F.3d, 1364 (Fed. Cir. 2006).....................................................................................2

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003).....................................................................................17

*Mymail, Ltd. v. Am. Online, Inc.*,
  476 F.3d 1372 (Fed. Cir. 2007).......................................................................................3

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008).....................................................................................10

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
   520 F.3d 1358 (Fed. Cir. 2008)......................................................................................23

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).........................................................................13, 14, 22

*Pinpoint Inc. v. Amazon.com*,
   2004 U.S. Dist. LEXIS 17641 (N.D. Ill. Aug. 31, 2004) ...........................................23

*ResQNet.com, Inc. v. Lansa, Inc.*,
   346 F.3d 1374 (Fed. Cir. 2003)........................................................................................6

*Soque Holdings (Bermuda) Ltd. v. Keyscan Inc.*,
   2010 U.S. Dist. LEXIS 60501 (N.D. Cal. June 4, 2010) ...........................................12

*Superguide Corp. v. DirecTV Enters., Inc.*,
   358 F.3d 870 (Fed. Cir. 2004)........................................................................................23

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012).........................................................................................2

*WMS Gaming Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)......................................................................................11

Apple's voluminous Reply *Markman* Brief relies on new citations to intrinsic evidence, additional extrinsic evidence, and even a new expert declaration.  But none of this evidence remedies the inherent failures of its Opening *Markman* Brief.  Indeed, Apple's Reply only highlights the fundamental problems with its positions.  For example:

- Apple cites new structure to support the disputed functional limitations.  But, like the citations in its Opening Brief, the new evidence provides no more structural detail than the claims themselves and merely mimics the functional language of the claims;

- For the '050 patent, Apple contends newly cited portions of the specification support its position that the claims are not limited to "pushing" and that "invocable speed reference" is not related to a user's current location.  But, as with its previous citations, the new evidence is either irrelevant to the asserted claims or supports Motorola's position;

- For the '332 patent, Apple neither justifies its overly broad constructions nor explains away contradictory explicit guidance from the specification;

- For the '760 patent, Apple spends many pages addressing a non-infringement position asserted by Samsung in the *Apple v. Samsung* litigation that Motorola has already explained it is not asserting in this case; and,

- For the '072 patent, Apple introduces misleading case citations and extrinsic evidence that is irrelevant to the parties' disputes.

Motorola's consistent and reasoned approach to construing the disputed terms is grounded in the claim language and relevant portions of the specification.  In contrast, Apple attempts to justify its labored constructions and inconsistent positions by relying on irrelevant and extraneous evidence.

## I.    APPLE'S '050 PATENT

Apple advances several new arguments and identifies new support for its proposed construction of the "invocable speed reference" and "situational location" terms.  None of these take away from Motorola's proposed constructions.

### A.     Apple Relies On Portions Of The Specification That Are Irrelevant To Construing The Term "Invocable Speed Reference"

Akin to arguments made in its Opening Brief, Apple contends the specification is "riddled" with examples where content is not pushed but provided in response to a query.[1]  (Apple Reply Br. at 40.) However, the citations on which Apple relies to support its position are irrelevant—they have nothing to do with the disputed claims.

It is axiomatic that the <u>claims</u> define the scope of an invention.  And, that a patent specification can describe unclaimed aspects of an innovation.  Apple acknowledges these fundamental premises in its Reply Brief.  (Apple Reply Br. at 39 ("While the specification describes an embodiment where the speed reference can be a web address, the claims make clear that this embodiment is not what is claimed.").)

Critically, Apple's newly cited support relates to unclaimed aspects of its invention.  This is hardly surprising.  The '050 patent family comprises four issued patents and nine pending applications by the same inventor.  All of these share the <u>same</u> specification but have <u>different</u> claims.  As with its prior references to the specification, Apple's new support relates to unclaimed embodiments.  It is therefore irrelevant to this Court's determination.  *LG Elec. Inc. v. Bizcordpsm Elecs. Inc.,* 453 F.3d, 1364, 1378 (Fed. Cir. 2006), *rev'd on other grounds by Quanta Computer v. LG Elec., Inc.*, 553 U.S. 617 (2008); *see also Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1250 (Fed Cir. 2008) (holding that the unclaimed preferred embodiments, which were covered by unasserted claims, were irrelevant for claim construction).  This principle of construction is particularly important in the context

---

[1]    Apple's Reply Brief begins with a section asserting that its construction is "drawn from the claims."  (Apple Reply Br. at 38, section C.1.a.)  Motorola addressed this argument in its Reply Brief (pp. 6-7) and will not repeat its discussion here.

of a coined term like invocable speed reference, as the Federal Circuit has found that only embodiments related to the claims may be used for construing a "coined term." *MyMail,* 476 F.3d at 1376.[2]

The fundamental flaw in Apple's position is evidenced by the '050 specification, which describes embodiments related to both "system" generated events and "user" generated events. "System" events are events that occur <u>without</u> user interaction (*see, e.g.,* '050 patent at 19:59-21:67), while "user" events are those that occur only after a user takes action.  (*See, e.g., id.* at 18:36-19:58). The asserted claims are directed at "system" events; Apple's construction relies on portions of the specification describing "user" events.

The asserted '050 patent claims are directed at sending content (or an <u>invocable speed reference</u>) based on the <u>user's</u> situational location.  In the '050 specification, only "system" events satisfy this claim limitation.  The patent describes several real-world examples of "system" generated events.  ('050 patent at 3:8-4:11; 8:24-59.)  Motorola discussed one such example in its Opening Brief—a user walks towards a "Starbucks" coffee shop, and an advertisement is "pushed" to his mobile device.  (Motorola Opening Br. at 9).  The content is sent to the user based on his location, not based on a "query."

The patent specification definitively establishes that every real-world example involves pushing content, and not pulling.  (*Id.* citing '050 patent at 4:6-11 ("Thus, there are many applications for the present invention, <u>all</u> accomplished through simply changing the way the present invention is used. Content is pushed out to receiving devices at the most appropriate times.  Users do not pull the content with a query.")).)[3]  Rather than confront Motorola's citations, Apple ignores them.

---

[2]  Apple relies on *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1369 (Fed. Cir. 2012) for the proposition that courts "may not read limitations from the specification into the claims."  (Apple Reply Br. at 40.)  But that case is inapposite; it did not involve a coined term.  *Id.* at 1369.

In section C.1.(a) of its Reply Brief, Apple relies on *Honeywell v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 984 (Fed. Cir. 2007) for a similar proposition.  (Apple Reply Br. at 39.)  Contrary to Apple's assertion, however, that case did not involve a "coined term" either.  *Id.* at 993 (calling the term at issue "a term of art in avionics").

[3]  Apple argues that Motorola's construction attempts to read these embodiments into the claims.  (Apple Reply Br. at 40.)  Because this is a coined term, resort to the specification is required.  *Mymail,*

Tellingly, none of Apple's examples are "system" events.  For example, Apple cites the disclosure of "query" functionality to support its construction (*id.* at 4:60-67 (emphasis added)):

> Yet another advantage of the present invention is providing new and useful query functionality for querying the total number of known receiving data processing systems for a particular situational location.

While this quote does disclose a "query" functionality, it has nothing to do with delivering the claimed "invocable speed reference" that is the subject of the asserted claims.  To the contrary, it expressly relates to requesting the "total number of known receiving data processing systems" or, as explained later in the specification, a "client count."  (*Id.* at 20:18-25.)  The same is true for many of Apple's other citations.  (Apple Reply Br. at 41 (citing '050 patent at 20:18-25, 24:56-58, 30:56-31:6).)

Apple's remaining support fares no better.  As with the citations from its Opening Brief, much relates to embodiments that have nothing to do with the situational location of a user.  For example, Apple references 'a "situational location query" to support its construction.  (Apple Reply Br. at 41 (citing '050 patent at 14:60-63, 20:7-14, 24:31-54, 30:31-52, Figs. 12B and 15B).)  But these embodiments deal with situational location of content (*i.e.* a restaurant advertiser), not users.  (*See* '050 patent at 20:9; 14:16-20 (explaining how a user may perform a situational location query by using "validated parameters" that deal with the situational location information "associated with the content").)

Apple also relies on embodiments allowing the user to "solicit content" by entering keywords, interests, or a "bit mask."  (Apple Reply Br. at 44-45 (citing '050 patent at 15:9-15, 3:32-33, 14:28-32, 13:57-67, 20:7-11).)  But all these passages describe allowing a user to enter information during system registration, not while the user is actually using the system—*i.e.*, when there would actually be a

---

*Ltd. v. Am. Online, Inc.* 476 F.3d 1372, 1376 (Fed. Cir. 2007). Motorola addressed this argument in its Reply. (Motorola Reply Br. at 3.)

situational location. ('050 patent at 20:1-2 (stating the RDPS must de-register and re-register when the user inputs new interests settings).)  Again, the cited embodiment has nothing to do with the claims.[4]

Only Motorola has cited to relevant portions of the specification—*i.e.*, where an invocable speed reference is sent to a user based on the <u>user's</u> situational location, as claimed.[5]  In each case, the specification unequivocally requires that the reference is <u>pushed</u> to the user.  Indeed, this kind of system action without a user query is at the core of Apple's asserted claims.  Apple's citations have nothing to do with its claims here, and should therefore not be used to construe an invocable speed reference.

Apple also argues that because two parent patents to the '050 patent (U.S. Patent Nos. 6,456,234 ("the '234 patent") and 7,187,997 ("the '997 patent") require "automatic" sending of content, the asserted claims cannot be limited to "pushing."  (Apple Reply Br. at 43.)  Apple contends that because the term "automatically" is used in the parent patent's claims, the claims of the '050 must be devoid of any "automatic" aspects, else there will be no distinction between the claims of the '050 patent and its parent.  However, this faulty contention overlooks the many differences in scope between the claims of the '050 patent and its parent patent,[6] which mean that no claim differentiation or other concerns are implicated by the presence of "automatic" aspects of the claims in each patent.  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3D 1361, 1370 (Fed. Cir. 2007).  Simply put, the claims of the parent patents cover different inventions than the asserted claims.  It would be improper to use them to inform the

---

[4] Apple also cites a portion of the specification where the user's device requests information (Apple Opening Br. at 45, citing '050 patent at 13:59-67.).  Since this is related to an automatic request from the user's device and not the user, this has nothing to do with a <u>user</u> entering a query and is irrelevant to whether the claims contemplate a "pull."

[5] Motorola's proposed construction are further in accord with the relevant portions of the Background of the Invention and Brief Summary of the Invention.  ('050 patent at 1:30-5:10.)

[6] For example, the claims of the '234 and '997 patents are related to delivering content based on a "current positional attribute" and "physical location coordinates" of the receiver, *i.e.*, the user's cell phone – not the "situational location of the user."  The '997 patent claims further relate to other aspects of the specification, such as "registering" the phone with a service, and determining whether a phone is "eligible to receive" information.

construction of the '050 patent.[7]   *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) ("Although a parent patent's prosecution history may inform the claim construction of its descendant, the [parent] patent's prosecution history is irrelevant to the meaning of this limitation because the two patents do not share the same claim language.").

### B.     Apple's Reliance On The Specification And Prosecution History Are Irrelevant To The Construction Of "Situational Location Of A User"

Apple cites new intrinsic evidence for its "situational location" construction.  However, Apple's new support is either not related to the "situational location of the <u>user</u>" or supports Motorola's construction.

For example, Apple cites to portions of the '050 patent completely unrelated to the user's location in support of its construction.  (Apple Reply Br. at 2:30-34.)  But these citations plainly relate to "the situational location of <u>the remote data processing system</u>" and the "situational location of said <u>receiving data processing system</u>," not a user.  Apple also cites an embodiment enabling emergency broadcasts.  (Apple Reply Br. at 49 (citing '050 patent at 3:60-64).)  But this embodiment is also unrelated to the claims—there is utterly no connection between this embodiment and either invocable speed references or situational locations of the user.

Apple next cites to portions of the specification it contends describe "situational location" as including "predictive information" and "directional change."  (Apple Reply Br. at 48-49 (citing '050 patent at 8:41-48 and 10:59-62).)  It is unclear how this language supports Apple's construction.  Indeed, these embodiments describe determining the user's <u>current location</u> consistent with Motorola's construction.  For example, the '050 specification describes "predictive information" and "directional change" in the context of a user receiving an advertisement as he travels towards a Starbucks

---

[7]   Apple's reliance on *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963 at 973, n.5 (Fed. Cir. 2006) is misplaced.  In that case, the asserted claims were directed to a specific salt.  The Court refused to construe a similar claim in a parent patent as including that salt, because doing so would render the subsequent patent "superfluous."  No such issue exists here—because there are many differences between the asserted claims and the claims of the '234 and '997 patents, construing an invocable speed reference to be "pushed" would not render the asserted claims superfluous.

coffeehouse.  With this context, "predictive information" is plainly used to determine whether the user is going to be near the Starbucks, and therefore must first determine the user's current location.  ('050 patent at 8:41-51.)

Apple's reliance on unrelated portions of the specification is a *post hoc* analysis intended to distort the proper meaning of its claims. The relevant portions of the specification are entirely consistent with Motorola's construction.  Each and every time the '050 patent describes sending an invocable speed reference to a user based on the <u>user's</u> situational location, it does so based on the user's current location, as required by Motorola's construction.

## II.     APPLE'S '332 PATENT

### A.     Apple Admits An "Application Object" Must "Visually Include" Information About An Application

Apple admits that "for information to be 'included' within the application object, it must be visually included within the application object as that object is shown on the screen."  (Apple Reply Br. at 8.)  Motorola agrees—the '332 patent requires "visually including" information about a particular application.  Considering Apple's current position, Motorola proposes a compromise construction of  "a graphical element that visually includes information about an particular application."  By incorporating the "visual" aspect of inclusion, the "presenting" aspect of Motorola's proposed construction is covered by this compromise proposal.[8]  And, Apple's concerns regarding Motorola's proposed construction would be alleviated.

### B.     "Display Object" Must Be Construed To Require A Graphical Representation

Motorola agrees with Apple that the specification shows a "broad meaning" of display object.  (Apple Reply Br. at 11.)   Indeed, Motorola's construction permits it to include any graphical

---

[8]   Apple's Reply Brief fails address that information about an application is always both "included" and "presented" in the '332 patent figures described at its supporting specification citations. (Apple Reply Br. at 9-10 (citing '332 patent at 7:3-4, 8:15-16, 15:7-8, and 16:6-27).)

Further, Motorola previously addressed Apple's arguments regarding claim differentiation in Motorola's Reply Brief at pp. 13-15.

representation of anything.  Motorola only contends that, as the specification consistently teaches, it

does not cover text.  Notably, every exemplary  "display object" that Apple points to is depicted in the



**FIG. 1**

specification as a graphical representation.  For example,

"the phone object 110, the email object 112, the Web

object 114, [and] the media player object 116" cited by

Apple (*id.* at 11 (citing '332 patent at 4:12-16)) are

depicted as "graphical representations of system objects"

in Figure 1 of the '332 patent.  *See* excerpt of Fig. 1

reproduced at left; *see also* '332 patent at 3:65-67; 4:36-45, 54-60.

Apple's argument that a "display object" may include objects "that <u>represent</u> text" similarly does

not help its cause.  (Apple Reply Br. at 11.)  An email object, such as that cited by Apple (*id.*), may

"represent" text insofar as it is associated with the textual name of the email service, and a graphical

calendar object could "represent" the textual name of the calendar.  (*Id.*)   But the whole point is that

neither of the objects are <u>themselves</u> text as shown by the consistent and exclusive description in the

specification.  (Motorola Opening Br. at 24-26; Motorola Reply Br. at 11-13.)  Apple's word games are

unavailing in light of the clear, consistent usage of the term "display object" to mean a "graphical

representation of a system object."

Apple continues to criticize Motorola's proposed construction for its inclusion of the words

"system object."  (Apple Reply Br. at 10-11.)  This sideshow does not advance Apple's case.  Motorola

has already offered a compromise construction proposal for "display object"—"graphical representation

of an object"—that remedies any concerns regarding the system object language.[9]  (Motorola Reply Br.

at 12-13.)

---

[9]   Apple contends Motorola misrepresented that Apple agreed to Motorola's proposed
construction during the parties' meet and confer.  But Motorola never said that.  What Motorola said,
which Apple does not dispute, is that Apple agreed a display object must be a "graphical
representation," not text.  (Motorola Opening Br. at 24 n.8.)

### III.   APPLE'S '760 PATENT

#### A.   The Parties' Dispute Regarding The "Completely Substituting" Limitation In This Case Is Distinct From The *Apple v. Samsung* Case

Apple's continued refusal to agree to Motorola's construction of the "completely substituting" phrase is puzzling.  Apple itself admits that "[t]his straight-forward, non-technical language means what it says: … 'the display of the list of interactive items is completely substituted (replaced) with display of contact information for a respective caller.'"  (Apple Reply Br. at 30.)  This admission essentially adopts Motorola's proposed construction:  "entirely replacing the display of the list of interactive items with the display of information for a selected contact."  (Motorola Opening Br. at 30.)

Yet, Apple dedicates pages in reply fighting against Motorola's proposed construction—a proposal based on Apple's prior construction.  The core of Apple's position is an irrelevant dispute in the *Apple v. Samsung* litigation.[10]  (Apple Reply Br. at 31-35).  Apple argues "[u]nless Motorola is conceding that it does not intend to pursue the same non-infringement arguments made by Samsung, Motorola's assertion that Judge Koh's construction addressed 'entirely different' issues is disingenuous."  (*Id.*)

Apple is simply manufacturing a dispute.  Motorola has repeatedly said it will <u>not</u> pursue the non-infringement argument made by Samsung that all of the contact information for a selected contact must replace the list of interactive items.  (Motorola Reply Br. at 15 n.7; Motorola Opening Br. at 37.)  Apple's arguments in reply attacking Motorola's former construction are just simply irrelevant.

#### B.   "Contact Object" Must Contain Contact Information, As Motorola Proposes

Apple continues to argue that no construction is necessary for "contact object."  However, it is plainly apparent from the brief that the parties' dispute whether the claim requires a user selectable object that <u>contains</u> contact information (Motorola) or a user selectable object that <u>is associated with</u>

---

[10]   Apple has now dismissed the '760 patent without prejudice from the *Apple v. Samsung* litigation.  *See* Stipulation And Order Regarding Dismissal Of Claims (DE 764), *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630 (N.D. Cal. Sept. 6, 2013).

contact information (Apple) is apparent from the parties' briefs.  The dispute must be resolved.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Apple argues that Motorola's construction should be rejected because the '760 patent does not expressly use the word "containing."  (Apple Reply Br. at 36.)  However, as detailed in Motorola's briefing, the '760 patent specification shows that a contact object has and displays contact information— *i.e.*, the contact object <u>contains</u> contact information.  (Motorola Opening Br. at 38-39; Motorola Reply Br. at 17-18.)  That the words of Motorola's construction are not found verbatim in the patent is no matter because the construction fully captures the meaning assigned by the specification.  *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) ("claim construction often calls upon words other than those of the patent, lest the claim simply define itself").

In purported support of its position, Apple also argues that the '760 patent "explicitly contemplates a broader set of implementations [for 'contact objects'], including icons."  (Apple Reply Br. at 37.)  Again, Apple relies on irrelevant portions of the specification to support its position.  The first citation ('760 patent at 10:41-51) describes the operation of a touch-sensitive touch screen containing generic "user-interface objects" and utterly fails to discuss "contact objects."  Apple's second citation ('760 patent at 13:27-31) is also misplaced—this section generally describes "user-interface objects" that may be within the "graphics module" of software running on a mobile device.  It does not inform the proper meaning of "contact object" within the '760 patent claims.

Apple's Reply Brief also contains <u>no</u> support for its alternative construction for "contact object."  While Apple again points to intrinsic support ('760 patent at 25:8-24 and Fig. 12C), these sections portray <u>only</u> contact objects that contain contact information, consistent with Motorola's proposal.  (Apple Reply Br. at 37.)  Motorola's construction is consistent with the usage of the term throughout the specification and should be adopted.

## IV.     APPLE'S FUNCTIONAL CLAIM LIMITATIONS

In cannot reasonably be disputed that the '332 and '760 patents each contain expansive functional limitations without adequately disclosing algorithms to provide structure and meaningful limits to the claims. While Apple's Reply belatedly introduces new alternative constructions in tacit recognition that these are functional limitations, Apple's constructions fail to provide adequate corresponding structure, rendering these claims indefinite.

### A.     Apple's New Supposed Structure For The '332 Patent Is Insufficient As A Matter Of Law

In its Opening Brief, Apple identified <u>nothing</u> in the claims as providing sufficient structure to render § 112, ¶ 6 inapplicable.[11]  Nor did Apple even attempt to argue that the specification contained algorithms adequate to serve as corresponding structure to any of the functional limitations.

Yet, Apple argues for the first time in its Reply Brief that the disputed limitations of claim 13 provide adequate structure to render § 112 ¶ 6 inapplicable.  Apple also now argues that, if the Court finds that § 112 ¶ 6 applies, the specification includes sufficient corresponding structure to avoid a finding of indefiniteness.  Apple's initial failure to identify adequate structure was correct; none exists.

#### 1.     Recitation Of The Words "Mobile Device" In Claim 13 Is Insufficient To Prevent The Application Of § 112 ¶ 6 To A Functional Claim

Apple argues that the limitations of claim 13 are not functional because the words "mobile device" used in the claim connote a particular structure to a person having ordinary skill in the art. (Apple Reply Br. at 14-17.)  But it is axiomatic—and undisputed by Apple—that the structure for a computer-implemented system must "be more than simply a general purpose computer."  *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.,* 521 F.3d 1328, 133 (Fed. Cir. 2008); *WMS Gaming Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1329 (Fed. Cir. 2012); *Soque Holdings (Bermuda) Ltd. v. Keyscan Inc.*, 2010 U.S. Dist. LEXIS 60501, at *37 (N.D. Cal. June 4, 2010).   Rather, the structure

---

[11]   Motorola rebuts Apple's argument that the absence of the word "means" renders §112, ¶6 inapplicable for the '332 and '760 patents in its Opening Brief at pp. 40-52 and its Reply Brief at pp. 21-23, 27-28.

must be a computer that is specifically programmed to perform the claimed functions. *Aristocrat Techs.*, 521 F.3d at 1338.

### (a) "Mobile Device" Is Generic Structure And Insufficient As A Matter Of Law

The '332 patent recites only a general purpose computer—a mobile device. Indeed, "mobile devices" are not capable of performing the claimed functions unless they are provided specialized programming, just like a general purpose computer requires under Federal Circuit precedents. Apple attempts to circumvent this black-letter law by arguing that it is inapplicable because the claims in those cases either used the words "means for" or the word "means." (Apple Reply Br. at 17.) But as detailed in Motorola's Opening Brief, it is just a presumption that a term not using the word "means" is not functional. The issue is whether Motorola rebutted the presumption. Motorola contends it has by showing the absence of any non-generic structure in the claim language itself.

### (b) "Mobile Device" Did Not Have A Well-Understood Meaning To One Of Skill In The Art

Even if a "mobile device," *arguendo*, was sufficiently non-generic, Apple still must demonstrate that a "mobile device" has a both a general, well-understood meaning to one of ordinary skill in the art, and that it connotes specific structure. *Soque Holdings*, 2010 U.S. Dist. LEXIS at *37 ("A reference to a "computer" provides no basis to distinguish the structure from any other general purpose computer; thus, "computer" does not adequately describe a specific structure."). Apple fails to do so.

For example Apple cites a Cisco patent and an IBM publication to establish there was a known, specific structure for a "mobile device" in 2008. (Apple Reply Br. at 15-16.) As an initial matter, the relevance of this evidence is tenuous at best. Neither reference is related to the '332 patent, neither shares common inventors with the '332 patent, neither has any connection to the work of the '332 patent named inventors, and neither has been owned by or assigned to Motorola. Apple also fails to provide any basis to show that these materials are in the same field of art as the '332 patent, or that one of ordinary skill in the field of the '332 patent would look to these patents to understand the meaning of a

"mobile device."  The role of extrinsic evidence in claim construction is generally limited, but Apple's

complete failure to tie them to the inventions of the '332 patent renders their probative value

nonexistent.  *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed.

Cir. 2008) (although extrinsic evidence "can help educate the court regarding the field of the invention

and can help the court determine what a person of ordinary skill in the art would understand claim terms

to mean," when it "achieves neither of these objectives [it] is of no value to the construction of the

disputed claim language") (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005)).

Even if considered, these references do nothing to make Apple's point.   The cited portion of the

Cisco patent does not even use the phrase "mobile device."  (Exhibit A to Affidavit of Lawrence Lien in

Support of Apple's Reply Brief (DE 215) ("Lien Decl.") at Col. 1:10-22.)  Even more, the patent defines

"personal mobile electronic devices" by listing specific examples such as "cellular telephones, portable

music players, and radios," which further demonstrates the generic, non-specific nature of such

terminology similar to that used in the '332 patent.  Apple's citation to an IBM publication similarly

fails—nowhere does this patent application state that the term "mobile device" has an ordinary meaning

and, to the contrary, it defines the term by providing specific examples, such as "cellular

telephones."  (Exhibit B to Lien Decl. at ¶ [0001].)  Indeed, IBM gives separate descriptions for "mobile

devices" and Apple's "smartphones," suggesting smartphones (such as those at issue in this case) are not

even "mobile devices."  *Id.*

Apple further quotes three Motorola-owned patents.  According to Apple, because one claim in

these patents uses the words "mobile device," Motorola must have believed that the term connoted

specific structure.  Apple's position, however, demonstrates its misunderstanding of the relevant law:

the claim on which it relies is a <u>method</u> claim.  Method claims are not required to set forth structural

elements, only the steps for performing the method. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,

576 F.3d 1348, 1363 (Fed. Cir. 2009) ("[T]he patented invention at issue when a method patent is

implicated consists of a 'series of acts or steps,'. . . the steps are not the physical components used in

13

performance of the method.").  Motorola's use of the term "mobile device" in a method claim does not connote any particular meaning or understanding of any structure associated with the phrase.  And in any event, those patents are not at issue here and no Court has ever adjudicated whether they are subject to § 112, ¶ 6.

(c)     **Motorola's Extrinsic Evidence Shows "Mobile Device" Did Not Suggest Specific Structure To A Person Of Ordinary Skill In 2008**

Motorola does not believe expert testimony will inform this Court's consideration of  whether a mobile device, as used in the '332 patent, connotes specific structure.  *Phillips*, 415 F.3d at 1318 ("extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence").  Nevertheless, should the Court give weigh to expert opinion, the term "mobile device" did not connote any specific structure to one of ordinary skill in the art in 2008.  (*See* Declaration of Daniel Wigdor ("Wigdor Decl.").)  Rather, it was used as a general term applied somewhat arbitrarily to any number of devices, regardless of whether they were easily portable or contained electronic functionality.[12]  A "mobile device" to one of skill in the art in 2008 would simply mean any device that was mobile. (Wigdor Decl. at ¶10.)

Apple argues a person having ordinary skill in the art may have considered a mobile phone or portable media player to fall into the category of a "mobile device."  (Apple Reply Br. at 15.)  But, by the same logic, she would also have considered a laptop computer, a handheld videogame, or even a portable radio to also be mobile devices.  This illustrates the fundamental problem with Apple's position—without anything more, a "mobile device" does not provide any more specificity than (and is equivalent to) reciting a "general purpose computer."

The opinion of Motorola's expert Prof. Wigdor on the meaning of "mobile device" to one of ordinary skill in the art is consistent with the extrinsic evidence cited by Apple and discussed above.  By

---

[12]   Apple's citations to discussion of the words "mobile device" in the '332 patent confirms the breadth of the term "mobile device."  (Apple Reply Br. at 16-17 (citing 1:15-20, 3:29-36).)

contrast, Apple's expert's opinion contradicts Apple's own extrinsic evidence which teaches that, as shown above, that the term "mobile device" was not any particular "class or set of structures." (*Compare* Konstan Decl. at ¶ 8 *with* Exhibit B to Lien Decl. at ¶ [0001].)  Even more, Prof. Konstan's opinion that one would understand "mobile devices" to include "smart phones" (Konstan Decl. at ¶ 8) is inconsistent with Apple's cited IBM publication which suggests a distinction between mobile devices and smart phones.  (Exhibit B to Lien Decl. at [0001].)  Even Apple cannot formulate a consistent position concerning the specific structure conveyed by the use of the term "mobile device" in the '332 patent.

### 2.      Apple's Newly Cited Structure For The '332 Patent Is Insufficient

Apple introduces another new argument in its Reply.  Even if claim 13 of the '332 patent were subject to § 112, ¶ 6, Apple argues, the specification discloses sufficient structure such that the claims are valid.  However, Apple's newly cited "structure" is not corresponding structure for the claimed functions.  Thus, claim 13 of the '332 patent is invalid.[13]

### (a)      Apple's Attempts To Dodge The Functional Nature Of Claim 13 Fall Flat

Apple complains that "Motorola never specified <u>any</u> alleged 'functions' found in claim 13." (Apple Reply Br. at 18.)  This is disingenuous.  If Apple truly believed that Motorola had omitted these functions, Apple would and could have said something at some point in time since the parties exchanged their constructions six months ago.  But Apple never did so.  Not during the numerous meet and confers leading up to claim construction or its Opening Brief.  Apple raised this point only <u>after</u> it mistook the briefing page limits and realized it would be introducing new corresponding structure, improperly and for the first time, in its Reply Brief.  (Apple Reply Br. at 18.)

Apple did not raise this argument earlier because it is wrong.  Motorola identified functions in the Joint Claim Construction Chart.  (DE 200.)  Motorola also presented those functions in bold text in

---

[13]   Motorola previously addressed the propriety of resolving issues of indefiniteness during *Markman* in its Reply Brief at p. 21, n.9.

its Opening Brief.  (Motorola's Opening Br. at 45, 50-51.)  And, certainly, Apple had no difficulty in identifying the functions for both the '332 and '760 patent from Motorola's claim constructions, as it copied these functions identically in its Reply to identify corresponding structure to these functions. (Apple Reply Br. at 21.)

Apple's other positions concerning claim 13 also fall flat.  Relying only on its own expert's testimony, Apple further argues that the structure for the functional limitations of claim 13 "need not be an algorithm" because claim 13 is not directed to a "software algorithm or particular way of programming."  (*Id*. at 19.)  This argument does not pass the straight face test.  The claims require that a mobile device include a "processor" that performs the recited functions.  Likewise, the '332 specification itself refers to all the embodiments described in the '332 patent as "program components" or "software products."  ('332 Patent at 25:43-55; *see also id.* at 23:58-60 ("Embodiments of the invention can be implemented as one or more computer program products").)

That Apple's expert would even take the position that programming is not required here only further demonstrates why his testimony should be ignored altogether.  Indeed, even <u>Apple</u> argued in its Opening Brief that claim 13 was a "standard computer readable medium claim," analogous to a *Beauregard* claim.[14]  (Apple Opening Br. at 28.)  One of ordinary skill in the art would immediately understand that claim 13 describes functions to be performed by a general purpose computer processor. (Wigdor Decl. at ¶17.)  Accordingly, corresponding structure for the functional limitations in claim 13 of the '332 patent must be in the form of an algorithm to be performed by the mobile device.  (Wigdor Decl. at ¶17.)

---

[14]    Motorola previously addressed Apple's assertions that *Beauregard* claims are not subject to §112, ¶6 in its Reply Brief at p. 22-23. Furthermore, Apple's citation to *In the Matter of Certain Portable Electronic Devices and Related Software* is unavailing—the Judge did not provide his reasoning behind holding the claim at issue in that case not subject to §112, ¶6, nor did he give any consideration to whether it was a *Beauregard* claim.  Inv. No. 337-TA-797, Order No. 57, 2012 ITC LEXIS 1835, at *82-83 (ITC June 26, 2012).

**(b)** **The Alleged Corresponding Structure Newly Cited By Apple Is Inadequate Because It Merely Mimics The Functions Set Forth In The Claims**

Based on its flawed premise that claim 13 is not directed to a computer program, Apple goes on to cite to swaths of the '332 patent that it contends are "corresponding structure" to the claimed functions. (Apple Reply Br. at 19-22.)  As an initial matter, Apple provides no explanation linking its corresponding structure citations to the functional limitations of claim 13.  For this reason alone, Apple's efforts to identify corresponding structure should be rejected.  *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 12131 (Fed. Cir. 2003) (portions of a specification that do not describe structure "cannot serve to clearly link software as a corresponding structure for the [claimed] function[s].").

Apple's expert parrots Apple's brief, identifying in his declaration supposed "associated structure" that would have been known to one of ordinary skill in the art.  (Konstan Decl. at ¶¶ 11-18.)  But none of this structure—primarily composed of images of user interfaces, flow charts, and descriptions thereof—is either a "computer program" or an "algorithm" as required by the Federal Circuit.  Nor does Apple contend that it is.  Accordingly, none of this structure can qualify as "corresponding" structure to the claimed functions.  (*See also* Wigdor Decl. at ¶¶11-16.)

In the alternative, Apple argues that the specification describes a "flow diagram" for performing the claimed functions.  (Apple Reply Br. at 23-24.)  But the figures and portions of the specification Apple cites provide no additional detail over what the claims already recite as functions.  For example, Apple cites to Figure 17 and related portions of the specification as "corresponding structure" to each of the claimed functions.  However, this figure is nothing more than an illustrated version of the claims, and simply parrots the language of claim 13:



Corresponding structure cannot simply restate what is already in the claims as a matter of law. *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363-64 (Fed. Cir. 2012) (upholding indefiniteness because the alleged corresponding structure "provides no more structure than the [claim term] itself").

Apple concedes these citations describe "different states of a mobile device's user interface, and descriptions of the transitions between these states." (Apple Reply Br. at 23.)  But, critically, they do not explain how to program a mobile device to transition from one state to the next or any algorithms for the same purpose. (Wigdor Decl. at ¶19-20.)   It does nothing to provide meaningful limits to the scope of the claims, as they must to be an algorithm providing specific structure.

In a tacit admission that the specification is lacking in structure, Apple attempts to save the insufficient structure of the '332 patent through the declaration of its expert.  Prof. Konstan opines that one of ordinary skill in the art would understand how to "implement" the functions claimed by the '332 patent.  (Apple Reply Br. at 24.)  But this opinion is irrelevant as a matter of law.  As the Federal Circuit held in *Medical Instrumentation*, "[t]he correct inquiry is to look at that disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass software for

18

[performing the claimed function] and been able to write such a program, not simply whether one of skill in the art would have been able to write such a program." *Id.*, 344 F.3d at 1212. The Federal Circuit rejected an argument—just like Apple's here—that there is sufficient structure merely because one of ordinary skill in the art would understand, based on well-known programming techniques, how to implement the claimed functions. *Id.*

**B.    Apple's Identification Of New Structure For Claim 10 Of The '760 Patent Is Purely Functional[15]**

Apple fares no better with the '760 patent. Apple tries to remedy its failure to identity sufficient structure in its Opening Brief by pointing to new portions of the specification of the '760 patent not identified in either its Opening Brief or in the claim joint claim construction statement.[16] According to Apple, this new structure discloses a "step-by-step" algorithm which "may be implemented by the disclosed hardware." (Apple Reply at 29.) It does not.

**1.    None Of Apple's Proposed Corresponding Structure Is Linked To The Functions Described In Claims 10 And 11**

As an initial matter, Apple fails to explain how <u>any</u> of this structure is linked to the claimed functions. Without a link, any "structure" disclosed in the specification <u>cannot</u> be "corresponding structure" under prevailing Federal Circuit authority. *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997) ("We hold that, pursuant to [§ 112, ¶ 6], structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claims."). On this basis alone, Apple's argument that § 112, ¶ 6 is inapplicable should be rejected.

---

[15]    Oddly, Apple continues to argue that claim 1 of the '760 patent is not a means-plus-function claim. Again, Motorola does not assert that claim 1 is means-plus-function—Motorola has only argued that claims 10 and 11 of the '760 patent are subject to construction under §112, ¶6.

[16]    Apple did not point to any structure corresponding to claim 11. Thus, if the Court determines claims 10 and 11 contain functional limitations, Apple tacitly admits that there is no corresponding structure in the specification for the claim 11. Therefore, the claim is indefinite.

It is not surprising that Apple has failed to identify a link—because there is none.  Much of what it identifies as "structure" has nothing to do with the claimed functions.  (Apple Reply at 29.)  For example, Apple confusingly identifies a "click wheel" ('760 Patent at 7:54-62), a "GPS" (*id.* at 13:44-50), a "music player" (such as an "iPod") (*id.* at 15:30-34) and software for a "dictionary," "calculator," and "alarm clock" as structure that performs the function of initializing a telephone call, "completely substitutes the display of the list of interactive items with display of contact information," and "initiates a communication with the selected caller via non-telephonic communication."  (Apple Reply at 29.)  Apple is overreaching—no one, much less one of ordinary skill in the art, would consider any of this structure for "initializing a telephone call" or any of the other claimed functions.

### 2. None Of Apple's Proposed Corresponding Structure Discloses An Algorithm

Even if Apple had linked its cited structure to the claimed functions, none of this structure includes an algorithm for performing the claimed functions, as is also required by law.  *Aristocrat,* 521 F.3d at 1338.  Rather, similar to the "structure" Apple cited in its Opening Brief, the additional structure Apple cites is purely functional, and provides no more detail than what is already recited in the claims. (Apple Reply Br. at 29.)  For instance, the cited figures disclose only a single user interface image or a flow chart repetitious of the '760 claim language.  Again, they do not teach one of ordinary skill <u>how</u> to implement the functions claimed in the '760 patent, much less an <u>algorithm</u> for doing so.

Apple cites to nearly ten columns of the specification as structure allegedly corresponding to the functional limitations of claim 10.  (Apple Reply Br. at 29 (citing '760 patent at 7:38-17:5).)  Yet, even in this broad section, there is no disclosure of structure corresponding to the claimed functions.  It is simply a description of hardware and software modules generally, with no discussion of how this hardware and software perform the claimed functions.  Tellingly, the claimed functions—*i.e.*, displaying a list of interactive items for missed telephone calls, initiating a return telephone call, completely substituting the display, and initiating a communication via non-telephonic communication—are <u>not even mentioned</u> here at all.

Apple further cites to '760 patent at 25:51-57 as structure for the "initiating a return telephone call . . ." function.  (*Id.*)  There is again no disclosure of structure corresponding to the claimed function.  Rather, this section explicitly states that it is describing "user interfaces displayed <u>during a call</u> in accordance with some embodiments" <u>after</u> the initiation step has already occurred.  (*Id.* (emphasis added).)  There is no description of how to perform the function of initiating a call in the first place.

Apple then argues that the portions of the specification it cites are adequate because the law only requires a description of "hardware, software, and process for managing missed calls and the display of contact information associated with a missed call." (Apple Reply at 29.)  Not so—much more is required.  As discussed above in connection with the '332 patent, structure for a computer-implemented functional limitation must include at least an algorithm for performing the claimed functions; it must explain <u>how</u> the claimed functions are performed, and not merely parrot in near-identical language what the claims already recite.  *Ergo Licensing*, 673 F.3d at 1363-64 (upholding finding of indefiniteness because the alleged corresponding structure "provides no more structure than the [claim term] itself").

Apple fails in its attempt to distinguish *Aristocrat Technologies* and *Blackboard*.  Apple's identified structure is no different than the functional "structure" found to be inadequate in these cases.  For example, the Federal Circuit in *Blackboard* found the supposed structure in the specification cited by the patentee to be "not a description of structure[, but rather] an abstraction that describes the function . . . which is performed by some undefined component of the system."  *Id*. at 1383.  That is exactly the case here.  Generally, the "structures" cited by Apple are no more than the functions already recited in the claims.  There is no description of specific structure—that is, a general purpose computer programmed with a specific algorithm—anywhere in the citations set forth by Apple.

## V.    MOTOROLA'S '072 PATENT

### A.    Apple Lacks Support For Its Assertion That A "Mirrored Database" Must Be "Identical"

A plain reading of Apple's proposed construction excludes a database that needs updating. (Motorola Opening Br. at 55.)  This is not an "illogical extreme" as Apple contends.  (Apple Reply Br. at 7.)  It is what Apple's construction dictates by requiring—without qualification—the content of the database to be identical.   And, while Apple indicates that is not what it "intends," there is every reason to believe a jury would interpret Apple's construction according to its literal reading.  Even Apple acknowledges that the literal reading of its construction is incorrect; Apple's construction should be rejected.

Nor does Apple's Reply Brief identify any intrinsic support for its position that the structure of the mirrored database must be "identical" to the structure of the subscriber device.[17]  (Apple Reply Br. at 7.)  An identical structure is not required by the '072 patent specification or claims to achieve the purpose of mirroring the content of a subscriber device on a mirrored database.  (Motorola Opening Br. at 54-56; Motorola Reply Br. at 30-32.)  Indeed, even Apple acknowledges that the content of the mirrored database is supposed to be the same as the content of the subscriber device.  (Apple Reply Br. at 6-7.)   Apple lacks any basis for requiring identical data structures on the subscriber device and mirrored database, accordingly its unfounded effort to narrow the claims must be rejected.  *Aria*

---

[17]    Apple cites extrinsic evidence for the first time, two U.S. patents, U.S. Pat. Nos. 6,279,038 and 6,381,325.  To support its argument that a "mirrored database" must be "an identical copy," (*See* Apple Reply Br. at 6 n.2.)  These patents neither refer nor are related to the '072 patent, share no common inventors with the '072 patent, have no connection to the work of the '072 inventors, and never have been owned by or assigned to Motorola.  What is more, Apple fails to explain how the quoted language demonstrates that "mirrored" means "identical" in the context of these unrelated patents or otherwise supports Apple's proposed construction.  Apple fails to indicate whether the purpose of a "mirrored database" in these other patents is similar to the '072 patent or suggest any other reason why its selected quotes, seemingly designed to confuse the reader because they are taken out of context, teach anything about how the '072 patent should be construed.  Because there is no link whatsoever between the '072 patent and these two other patents and Apple articulates no reason for the Court to consider them, none of the characteristics of this extrinsic evidence, including their usage of the word "mirrored" has any bearing on the construction of the "mirrored database" term in the '072 patent.  *Howmedica*, 540 F.3d at 1346 (quoting *Phillips*, 415 F.3d at 1319).

*Diagnostics, Inc. v. Sequenom, Inc.*, No. 2012-1531, 2013 U.S. App. LEXIS 16506, at *15 (Fed. Cir.

Aug. 9, 2013) (rejecting a claim construction that lacked support in the specification).

> **B.    Apple's New Authority Does Not Suggest That A "Database Including *One Of A Parameter Status And A* Mirrored Database" Requires *Both***

Apple continues its strained argument that the "database, including <u>one of</u> a parameter status <u>and</u>

a mirrored database," in Claim 4 of the '072 requires <u>both</u> a parameter status <u>and</u> a mirrored database.

Apple's argument is now based on *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870 (Fed. Cir.

2004), a case not cited in its Opening Brief.  (Apple Reply Br. at 4.)

Apple mischaracterizes *Superguide*.  In *Superguide*, the Federal Circuit considered the term

"storing <u>at least one of [a]</u> desired program start time, a desired program end time, a desired program

service, and a desired program type."  *Id.* at 884.  At issue in *Superguide* was whether the claim required

one or more of four listed criteria or whether it required one or more of each of the four criteria.  There

was no dispute that the "one of" allowed for one but not all, it really was just a dispute of what the "one

of" language applied to.  *Id.* at 885-86.  Thus, far from holding that as a matter of general principle that

the language "<u>one of a… and a…</u>" necessarily means that <u>both</u> are required as Apple contends, the

Federal Circuit's analysis in *Superguide* simply reiterates that interpretation depends on the particular

grammar of the claim, in view of the intrinsic evidence.  *Superguide*, 358 F.3d at 885-88.  As in *Ortho-

McNeil*, patentees may choose to draft claims using similar "conjunctive" language <u>without</u> requiring the

presence of every category.  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1361 (Fed.

Cir. 2008).  *See also Joao Bock Transaction Sys., LLC v. First Nat'l Bank*, 2013 U.S. Dist. LEXIS

88404, at *22 (N.D. Ill. June 24, 2013) ("the Court finds the phrase, '<u>one of… and…</u>' means '<u>one or

more</u> of the items in the list' or '<u>either or both</u> of the items in the list'"); *Pinpoint Inc. v. Amazon.com*,

2004 U.S. Dist. LEXIS 17641, at *52 (N.D. Ill. Aug. 31, 2004) ("The court construes 'content profiles

indicating <u>at least one of</u> the presence <u>and</u> the degree of' as 'content profiles indicate <u>either</u> the presence

<u>or</u> the degree of predetermined characteristics.").

Further, Apple has still not identified a single piece of intrinsic or extrinsic evidence to support its assertion that "[t]here is no difference in scope between 'parameter status' and 'status information.'" (Apple Reply Br. at 5.)  And, to the extent Apple is genuinely concerned that the term "parameter status" may be confusing to a juror, it would not simplify matters to introduce the phrase "status information."

Finally, Apple offers a revised construction that substitutes the word "each" with "the" to clarify that it agrees with Motorola that the claims of the '072 patent do not require a database for each subscriber device.  (Apple Reply Br. at 5.)  Unfortunately, Apple's compromise does not remedy the problems with Apple's proposed construction.  It does nothing to mitigate Apple's improper interpretation of  "database including <u>one of</u> a parameter status <u>and</u> a mirrored database" as requiring <u>both</u> a parameter status <u>and</u> a database.

### C.   Apple Mischaracterizes Motorola's And Its Own Proposed Construction For "Instruction Message That Corresponds To Spoken Instructions"

Apple argues in its Reply Brief that Motorola is attempting to use its proposed plain meaning construction "to read the phrase 'instruction message' out of the claim." (Apple Reply Br. at 2.) However, as Motorola has previously explained (Motorola Opening Br. at 57-59; Motorola Reply Br. at 29), it intends no such thing.  Rather, the '072 patent claims describe that a remote agent "receiv[es] from the subscriber device, an instruction message that corresponds to spoken instructions."  ('072 patent at claim 1.)  Thus, the '072 patent requires that the instruction message transmit the content of spoken instructions to the remote agent.  This is clear from the plain meaning of the term "instruction message that corresponds to spoken instructions," and Motorola does intend to depart from the plain meaning of this term in any way.

In contrast, Apple presents its own construction proposal, "data representing a spoken instruction" as providing helpful clarification of this simple term for the jury.  (Apple Reply Br. at 3.) Apple is wrong.  Apple's proposed construction is flawed because it introduces the phrase "data

24

representing" rather than "data corresponding" with no intrinsic support for its substitution of the claim

language—"corresponding"—with its own, narrower phrase "representing."

## VI.    CONCLUSION

For the foregoing reasons, Motorola respectfully submits that Apple's arguments and evidence

should be rejected, and Motorola's constructions adopted.


Dated:  September 19, 2013                                Respectfully submitted,

                                                         MOTOROLA MOBILITY LLC


                                                         By:    _/s/ David Perlson_
                                                                David Perlson

                                                         Charles K. Verhoeven
                                                         David Perlson
                                                         QUINN EMANUEL URQUHART &
                                                         SULLIVAN, LLP
                                                         50 California Street, 22nd Floor
                                                         San Francisco, CA  94111
                                                         Telephone: (415) 875-6600
                                                         Facsimile: (415) 875-6700
                                                         Email: charlesverhoeven@quinnemanuel.com
                                                                davidperlson@quinnemanuel.com

                                                         Edward M. Mullins (863920)
                                                         Astigarraga Davis Mullins & Grossman, P.A.
                                                         701 Brickell Avenue, 16th Floor
                                                         Miami, Florida 33131
                                                         Phone: (305) 372-8282
                                                         Fax: (305) 372-8202
                                                         Email: emullins@astidavis.com

                                                         Edward J. DeFranco
                                                         James M. Glass
                                                         Quinn Emanuel Urquhart & Sullivan, LLP
                                                         51 Madison Avenue, 22nd Floor
                                                         New York, New York 10010
                                                         Phone: (212) 849-7000
                                                         Fax: (212) 849-7100
                                                         Email: eddefranco@quinnemanuel.com
                                                                jimglass@quinnemanuel.com

                                                         David A. Nelson
                                                         QUINN EMANUEL URQUHART &
                                                         SULLIVAN, LLP

500 West Madison St., Ste. 2450
Chicago, IL  60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Email:  davenelson@quinnemanuel.com

*Attorneys for Plaintiff and Counterclaim-
Defendant Motorola Mobility LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or; in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ Regan N. Kruse</u>

Regan N. Kruse (Fla. Bar No. 84404)

### SERVICE LIST

*Motorola Mobility LLC v. Apple, Inc.*
Case No.: 1:12-cv-20271-SCOLA
United States District Court, Southern District of Florida

*Counsel for Defendant and Counterclaim-Plaintiff Apple Inc.*

Christopher R.J. Pace*
christopher.pace@weil.com
Edward Soto
edward.soto@weil.com
Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Tel.:  (305) 577-3100 / Fax:  (305) 374-7159

Jill J. Schmidt*
jill.schmidt@weil.com
Anne M. Cappella*
anne.cappella@weil.com
Brian C. Chang
brian.chang@weil.com
Nathan A. Greenblatt
nathan.greenblatt@weil.com
Jacqueline T. Harlow
jackie.harlow@weil.com
Jeremy Jason Lang
jason.lang@weil.com
Arjun Mehra
arjun.mehra@weil.com
Weil, Gotshal & Manges, LLP
201 Redwood Shores Parkway
Redwood Shores, California  94065-1134
Tel.:  (650) 802-3000 / Fax:  (650) 802-3100

Garland Stephens
garland.stephens@weil.com
Weil, Gotshal & Manges, LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Tel: (713) 546-5011 / Fax: (713) 224-9511

Jenny C. Wu
jenny.wu@weil.com
Weil, Gotshal & Mangers, LLP
767 Fifth Avenue
New York, New York 10153-0119
Tel: (212) 310-8000 / Fax: (212) 310-8007

Michael T. Pieja*
mpieja@bridgesmav.com
Kenneth H. Bridges*
kbridges@bridgesmav.com
Lawrence Lien*
llien@bridgesmav.com
Christopher Lubeck*
clubeck@bridgesmav.com
Michael T. Pieja*
mpieja@bridgesmav.com
Bridges & Mavrakakis LLP
3000 El Camino Real
One Palo Alto Square
Palo Alto, California  94306

Mark G. Davis*
Mark.davis@weil.com
Brian Ferguson
brian.ferguson@weil.com
Justin Constant*
Justin.constant@weil.com
David DesRosier*
david.desrosier@weil.com
Anish R. Desai*
anish.desai@weil.com
Christopher Marando*
christopher.marando@weil.com
Stephen K. Shahida*
stephen.shahida@weil.com
        Robert T. Vlasis, III

robert.vlasis@weil.com
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, DC  20005
Tel.:  (202) 682-7000 / Fax:  (202) 857-0940

*Admitted pro hac vice
Electronically served via CM/ECF

Tel.: (650) 804-7800 / Fax:  (650) 852-9224

Matthew D. Powers*
matthew.powers@tensegritylawgroup.com
Steven S. Cherensky*
steven.cherensky@tensegritylawgroup.com
Paul T. Ehrlich*
paul.ehrlich@tensegritylawgroup.com
Azra Hadzemehmedovic*
azra@tensegritylawgroup.com
Monica Mucchetti Eno*
monica.eno@tensegritylawgroup.com
Stefani C. Smith*
stefani.smith@tensegritylawgroup.com
Tensegrity Law Group LLP
201 Redwood Shores Parkway, Suite 401
Redwood Shores, California
Tel.:  (650) 802-6000 / Fax:  (650) 802-6001

*Admitted pro hac vice
Electronically served via CM/ECF